## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION, AKRON

----------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Case No. 23-50868 |
| | : | Jointly Administered |
| NEO ACCOUNTING | : | |
| & TAX SERVICES, LLC *et al.*[1] | : | Chapter 11 |
| | : | |
| | : | Judge Alan Koschik |
| | : | |
| Debtors and | : | |
| Debtors-in-Possession. | : | |
| | : | |

----------------------------------------------------------x

## AMENDED DISCLOSURE STATEMENT FOR
## DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

Dated: January 15, 2024

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
3930 Fulton Dr., Ste. 100B
Canton, Ohio 44718
Telephone: (330) 305-9700
Facsimile: (330) 305-9713
E-mail: tony@ajdlaw7-11.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

---

[1]     The Debtors are NEO Accounting & Tax Services, LLC (81-4592974) and Pearl Road Real Estate, LLC (81-4598361) Case No. 23-50869.

**DISCLOSURE STATEMENT DATED JANUARY 15, 2024**
**for the**

**Solicitation of Votes**

**with respect to the First Amended Plan of Reorganization**

**of**

**NEO ACCOUNTING & TAX SERVICES, LLC**

**AND**

**PEARL ROAD REAL ESTATE, LLC**

_____

All capitalized terms in this Disclosure Statement not otherwise defined herein have the meanings ascribed to them in the Plan.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................................1

OVERVIEW OF THE PLAN .........................................................................................................................2
*Summary of Classes and Treatment of Claims* ..................................................................2
*Summary Regarding Assertion and Treatment of Administrative Claims* ........................4
*Ordinary Course Liabilities* ..............................................................................................5
*Priority Tax Claims* ...........................................................................................................5
*U.S. Trustee Fees* ..............................................................................................................5
*Sources of Cash to Make the Plan Distributions* ..............................................................6
*Conditions Precedent to Confirmation and Consummation of the Plan* ..........................6
*Conditions to Confirmation* ..............................................................................................6
*Conditions to Effective Date* .............................................................................................6
*Modification or Revocation of the Plan; Exculpation and Limitation of Liability; Severability* ................7
    *Modification of the Plan* ................................................................................................7
    *Revocation of the Plan* ..................................................................................................7
    *Exculpation and Limitation of Liability* .......................................................................7
    *Severability of the Plan Provisions* ..............................................................................7
    *Determination of Tax Liability* ......................................................................................8

THE DEBTORS AND THEIR CHAPTER 11 FILINGS .........................................................................8
*Background* ........................................................................................................................8
*The Debtors' Secured Debt* ................................................................................................9
*Post-Petition Operations* ...................................................................................................9
*The Debtor's Professional Advisors* ..................................................................................9
*Bar Dates* .........................................................................................................................10
    *General Bar Date* .........................................................................................................10
    *Administrative Bar Date* ..............................................................................................10
*Extension of Time to Assume or Reject Real Property Leases* .........................................10
*Investigation of Avoidance Actions* .................................................................................10

THE DEBTORS' PLAN ...............................................................................................................................10
*Vesting of Property* ..........................................................................................................10
*Preservation of Rights of Action* .....................................................................................11
*Releases by Recipients of Distributions* ..........................................................................11
*Release of Liens* ...............................................................................................................11
*Effectuating Documents; Further Transactions; Exemption from Certain* ......................11

RISK FACTORS ...........................................................................................................................................12
*Ability to Make Plan Distributions* ..................................................................................12
*Allowance of Claims* .........................................................................................................12
    *Administrative Claims* ..................................................................................................12

DISTRIBUTIONS UNDER THE PLAN ......................................................................................................13
*Means of Cash Payments* ..................................................................................................13
*Compliance with Tax Requirements* .................................................................................13
*Setoffs* ...............................................................................................................................13
*Treatment of Disputed Claims* ..........................................................................................13
*Authority to Prosecute Objections* ....................................................................................14

GENERAL INFORMATION REGARDING THE PLAN .........................................................................14
*Classification and Treatment of Claims* ............................................................................14
    *In General* .....................................................................................................................14
*Treatment of Impaired Classes of Claims* .........................................................................14
    *Class B Claims:* .............................................................................................................15

i

*Class C Claims:* ........................................................................................................................15
NO ACCRUAL OF POSTPETITION INTEREST ..............................................................................................16
PAYMENT OF ADMINISTRATIVE CLAIMS .................................................................................................16
*In General* ..............................................................................................................................16
*Statutory Fees* .......................................................................................................................16
*Ordinary Course Liabilities* ...................................................................................................16
*Bar Date for Administrative Claims* .......................................................................................17
PAYMENT OF PRIORITY CLAIMS AND PRIORITY TAX CLAIMS ..................................................................17
EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................................................................17
*Assumptions and Rejections Generally* ..................................................................................17
*Claims Arising From Rejection; Bar Date For Rejection Damages* .........................................18
*Approval of Assumptions and Rejections* ...............................................................................18
RELEASES BY RECIPIENTS OF DISTRIBUTIONS .......................................................................................18
LEGAL EFFECTS OF THE PLAN ..............................................................................................................18
*Discharge* .............................................................................................................................18
*Injunction* .............................................................................................................................19
*Effect of Defaults Under the Plan* ..........................................................................................19
**VOTING AND CONFIRMATION OF THE PLAN** .....................................................................................**19**
VOTING PROCEDURES AND REQUIREMENTS ...........................................................................................21
CONFIRMATION HEARING ....................................................................................................................22
CONFIRMATION ..................................................................................................................................23
ACCEPTANCE OR CRAMDOWN ..............................................................................................................23
BEST INTERESTS TEST .........................................................................................................................24
FEASIBILITY .......................................................................................................................................25
**FEDERAL INCOME TAX CONSIDERATIONS** ........................................................................................**25**
**OF CONSUMMATION OF THE PLAN** ....................................................................................................**25**
GENERAL ...........................................................................................................................................25
FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS ............................................................................26
*Net Operating Loss Carryforwards* ........................................................................................26
*Reduction of the Debtor's Indebtedness* ................................................................................26
FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS ...........................................................27
*General* ................................................................................................................................27
*Bad Debt Deduction* .............................................................................................................27
**RECOMMENDATION AND CONCLUSION** ............................................................................................**28**

## INTRODUCTION

This Disclosure Statement is being submitted by NEO Accounting & Tax Services, LLC and Pearl Road Real Estate, LLC, Ohio limited liability companies (the "Debtors"), in connection with the solicitation of votes in favor of the Debtors' Plan of Reorganization (the "Plan"), a copy of which is attached hereto as Exhibit 1. The Plan represents the means by which the Debtors will exit bankruptcy. As discussed in more detail below, the Plan is the result of significant and intense negotiations by the Debtors and others. The Debtors believe that the Plan provides the best, and perhaps the only, means for their successful emergence from bankruptcy.

The confirmation of a plan of reorganization, which is the vehicle for satisfying the rights of holders of claims against, and equity interests in, a debtor's real and personal property, is the overriding purpose of a chapter 11 case. The primary objectives of the Plan are: (a) to alter the Debtors' capital structure to permit them to emerge from their chapter 11 case with a viable capital structure; (b) to maximize the value of the ultimate recoveries to all creditors on a fair and equitable basis; and (c) to settle, compromise or otherwise dispose of certain claims and interests on the terms that the Debtors believe to be fair and reasonable and in the best interests of its estate and creditors. The Plan provides for, among other things: (a) the cancellation of certain indebtedness in exchange for cash or other property of the Debtors, (b) the assumption or rejection of executory contracts and unexpired leases to which the Debtors are a party, and (c) the restructuring of obligations the Debtors owe to certain secured creditors.

**By order of the Court, this Disclosure Statement has been approved as containing "adequate information" for creditors of the Debtor in accordance with section 1125 of the Bankruptcy Code. The Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).**

**THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF THEIR CREDITORS. ALL CREDITORS ARE URGED TO VOTE IN FAVOR OF THE PLAN NO LATER THAN THE VOTING DEADLINE.**

The requirements for Confirmation, including the vote of creditors to accept the Plan and certain of the statutory findings that must be made by the Bankruptcy Court, are set forth under the caption "VOTING AND CONFIRMATION OF THE PLAN."

**IN SOME INSTANCES, PARTIES RECEIVING THIS DISCLOSURE STATEMENT ARE NOT ENTITLED TO VOTE ON THE PROPOSED PLAN AND, ACCORDINGLY, HAVE NOT BEEN PROVIDED WITH BALLOTS. FOR EXAMPLE, IF YOU HAVE FILED A CLAIM AGAINST DEBTORS, BUT THE DEBTORS ARE SEEKING BY OBJECTION THE TOTAL DISALLOWANCE OF YOUR CLAIM, YOU ARE NOT ENTITLED TO VOTE ON THE PLAN UNLESS, PURSUANT TO RULE 3018**

**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES"), THE COURT TEMPORARILY ALLOWS YOUR CLAIM FOR VOTING PURPOSES.** <u>**THUS, IF YOU HAVE FILED A CLAIM THAT THE DEBTOR IS SEEKING TO DISALLOW IN ITS ENTIRETY, YOU WILL NOT BE PERMITTED TO VOTE ON THE PLAN UNLESS (A) YOU FILE A REQUEST WITH THE COURT FOR THE TEMPORARY ALLOWANCE OF YOUR CLAIM FOR VOTING PURPOSES PRIOR TO THE VOTING DEADLINE AND (B) THE COURT RULES ON THAT REQUEST PRIOR TO THE CONFIRMATION HEARING**</u>.

---

**No person is authorized by the Debtors in connection with the Plan or the solicitation of votes for the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein, and if given or made, such information or representation may not be relied upon as having been authorized by the Debtors. While the Debtors will furnish to creditors entitled to vote on acceptance of the Plan such additional information as may be required by applicable law prior to the Voting Deadline, the delivery of this Disclosure Statement or any such additional information will not under any circumstances imply that the information herein is correct as of any time subsequent to the date hereof.**

## OVERVIEW OF THE PLAN

**Summary of Classes and Treatment of Claims**

The classification of Claims, the estimated aggregate amount of Claims in each Class, and the amount and nature of distributions to holders of Claims in each Class, are summarized in the following table.

The dollar amounts in the following table -- shown as the estimated aggregate amount of Allowed Claims that are expected in each Class -- constitute the Debtors' estimates as of the date of this Disclosure Statement of what the Claim amounts will be on the Effective Date. The estimated Claim amounts include the Debtors' estimates of the amounts of Claims upon resolution of all Disputed Claims. The distributions to be received by creditors in certain Classes could change if those estimates are not accurate.

*As discussed more fully below, the recovery on General Unsecured Claims depends on a number of variables, including the amount of Allowed Administrative Claims and Allowed Priority Claims. If Allowed Administrative Claims or Allowed Priority Claims exceed, by a material amount, the Debtor's current estimate of those Claims, holders of General Unsecured Claims could receive little, if anything, on their Claims.*

| Class | Type and Estimation of Claim | Summary of Treatment |
|-------|------------------------------|----------------------|
| Class A-1 | Secured claim of Medina County Treasurer Estimated Total Claim Amount: $8,498.07 | **Unimpaired** The Debtor will pay the Treasurer in full on the date when real estate taxes are ordinarily due. The Treasurer shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-1 Collateral"). |
| Class A-2 | Secured claims of KeyBank NA Estimated Claim Amount: $1,091,825.00, | **Impaired:** The Debtor will pay: $1,091,825.00, or the amount owed on the Effective Date, whichever is less, to Key on the promissory notes dated February 16, 2017, and April 12, 2017, as they may have been amended from time to time (the "Key Notes"). On the Effective Date, the Key Notes shall bear interest at a simple interest rate of 10.50% (prime rate plus 2.00%) per annum, amortized over a term of 180 months, with equal monthly payments due on the 15th day of each month in the amount of $12,069.02 on its obligations to Key, and a balloon payment of the remaining unpaid balance of the Key Allowed Secured Claim payable on the Due Date, which shall be the last day of the 60th month after the Effective Date. Key shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-2 Collateral"). Other than the foregoing, all other terms and conditions of the Key Notes, and related Loan Agreement, Mortgage and Security Agreements shall remain in full force and effect, including but not limited to the obligation of timely financial reporting.<br><br>The balance, if any, of Key's Claim shall be paid as a Class B Claim. |
| Class A-3 | Secured claims of Small Business Administration Estimated Claim Amount: $0.00 | **Impaired:** SBA's Claim shall be paid as a Class B Claim.<br><br>SBA's security interest in the Debtor's assets shall be cancelled and released upon the confirmation of this Plan. |
| Class A-4 | Secured claims of JP Morgan Chase Bank Estimated Claim Amount: $60,362.00 | **Impaired:** The Debtor will pay: $60,362.00 to Chase on the retail installment contract dated September 16, 2022, (the "Chase Note") pursuant to the original terms of the Chase Note. Chase shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-4 Collateral"). |

3

| Class B | Unsecured Claims of NEO Accounting & Tax Services, LLC Estimated Claim Amount: $3,032,842 | **Impaired:** Each holder of a Class B Allowed Claim shall receive in full satisfaction of its Allowed Class B Claim Distributable Cash from the Debtors plus the new value contribution from Brett Mangon. The payment by the Debtors to holders of Allowed Class B Claims shall be made in five (5) annual payments beginning in the first year following the Effective Date, but in no event, commencing later than June 30, 2024, and on the 30th day of June each year thereafter. Total payments of Distributable Cash shall be not less than One Hundred Eighty-seven Thousand Two Hundred Sixty-two and 00/100 Dollars ($187,262.00), plus the new value contribution by Brett Mangon, less administrative expenses of the Chapter 11 Case over the term of the Plan. Should any holder of an Allowed Class A-1 through A-4 Claim become entitled to participate in payment of Distributable Cash, then each holder of an Allowed Class B Claim will receive payments of a Pro Rata portion of Distributable Cash thereafter. |
|---|---|---|
| Class C | Unsecured Claims of Pearl Road Real Property, LLC Estimated Claim Amount: $44,622 | **Impaired:** Each holder of a Class C Allowed Claim shall receive no distributions under this Plan because the Debtor Pearl Road Real Estate, LLC is projected to have no net income during the term of the Plan. |
| Class D | Allowed Interests | **Unimpaired:** Each holder of an Allowed Interest shall retain such Interest in exchange for $10,000.00 contributed to the Plan as follows: $2,500.00 paid on the Effective Date and $2,500.00 every 120 days thereafter until $10,000.00 paid as additional Distributable Cash. |

## Summary Regarding Assertion and Treatment of Administrative Claims

Administrative Claims include Claims for costs and expenses of administration allowed under sections 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after June 27, 2023, (the "Petition Date"), to preserve the Estates and operate the businesses of the Debtors (such as payments for leased equipment and premises); (b) claims under section 507(b) of the Bankruptcy Code arising from the Debtors' failure, if any, to provide adequate protection for the Debtors' use of cash collateral; (c) compensation for legal, financial, and business advisory, accounting, and other services, and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (d) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

Except as otherwise provided in the Plan, requests for payment of Administrative Claims, unless previously Filed, must be Filed and served on the Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 30 days after the Confirmation Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Claims and that do not File and serve a request by the

applicable bar date will be forever barred from asserting such Claims against the Debtors, their successors or their respective property. Objections to such requests must be Filed and served on the Debtors and the requesting party by 20 days after the Filing of the applicable request for payment of Administrative Claims.

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered before the Confirmation Date must File and serve on the Debtor or such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such claim no later than 45 days after the Confirmation Date. Objections to any such claim must be Filed and served on the Debtors and the requesting party no later than 20 days after the Filing of the applicable request for payment of the claim.

**Ordinary Course Liabilities**

Except as provided in Article III of the Plan, holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their businesses will not be required to File or serve any request for payment of such Claims. Such Claims will be satisfied pursuant to Article III of the Plan.

**Priority Tax Claims**

Unless such holder and the Debtors or their successors or assigns agree to other terms, or a final order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim will be paid, in full subject to Article III of the Plan.

Subject to Article III of the Plan, the Debtors will pay, in full, in cash over time only those Allowed Priority Tax Claims. Such payment will be made no later than the Effective Date. The Debtors are aware of no Priority Tax Claims.

**U.S. Trustee Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports. The Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. All post confirmation quarterly reports shall include all disbursements made by the Reorganized Debtors during the applicable quarter.

**Sources of Cash to Make the Plan Distributions**

Cash necessary for distributions under the Plan will be generated from the Debtors' post-petition income, Mr. Mangon's new value contribution, and proceeds, if any, from sales of assets, and proceeds of Avoidance Actions. The Debtors estimate that distributions under the Plan for Administrative Claims and Priority Tax Claims will require not less than $10,000.00. Accordingly, the Debtors expect that they will be able to make all payments required under the Plan to the holders of Allowed Claims in Classes A through C.

The Debtors' projected ordinary income to fund the plan is shown on Exhibit 3 attached hereto. The Debtors anticipate sufficient future ordinary income for the period required to fund payments under their Plan.

**Conditions Precedent to Confirmation and Consummation of the Plan**

As set forth below, there are several conditions precedent to Confirmation and to the Effective Date.

**Conditions to Confirmation**

The Court will not enter the Confirmation Order unless, and until, each of the following conditions has been satisfied or waived (if waivable):

1.      The Court will have entered an order granting the Debtors' Motion to Approve Plan and Disclosure Statement, and

2.      The Confirmation Order will be reasonably acceptable to the Debtors, in form and substance.

In addition to the foregoing conditions to Confirmation, there are a number of substantial requirements under the Bankruptcy Code that must be satisfied for the Plan to be confirmed. See "VOTING AND CONFIRMATION OF THE PLAN - Confirmation."

**Conditions to Effective Date**

This Plan shall not be consummated, and the Effective Date shall not occur, unless the following conditions are satisfied or waived (if waivable):

1.  The Court will have entered the Confirmation Order; and

2.  The Court will have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtors to take all actions necessary or appropriate to implement this Plan.

**AS DESCRIBED BELOW UNDER THE HEADING "GENERAL INFORMATION REGARDING THE PLAN -- LEGAL EFFECTS OF THE PLAN," CONFIRMATION AND**

6

**THE OCCURRENCE OF THE EFFECTIVE DATE WILL HAVE A MATERIAL IMPACT ON CERTAIN LEGAL AND EQUITABLE RIGHTS OF THE HOLDERS OF CLAIMS.** Pursuant to Bankruptcy Rule 2002(f)(7), if the Court confirms the Plan pursuant to section 1129 of the Bankruptcy Code, the Debtors will file and serve on all parties in interest a notice regarding the entry of the Confirmation Order and certain of the legal effects of the Plan described below.

**Modification or Revocation of the Plan; Exculpation and Limitation of Liability; Severability**

### Modification of the Plan

Subject to the restriction on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify the Plan before its substantial consummation.

### Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor's' real or personal property; or (2) prejudice in any manner the rights of the Debtors.

### Exculpation and Limitation of Liability

Except as otherwise specifically provided in the Plan, the Debtors in their capacity as such, any of their respective present or former members, officers, directors, , advisors, attorneys, representatives, financial advisors, investment bankers, or agents, retained pursuant to section 327 of the Bankruptcy Code, and any of such parties' successors and assigns, will not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtors' Chapter 11 Case, negotiation and filing of the Plan, filing the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### Severability of the Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the

original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Determination of Tax Liability

Pursuant to section 505(b) of the Bankruptcy Code, the Debtors may request a determination of any unpaid liability of the Estate for any federal income tax incurred during the administration of its Chapter 11 Case by submitting a tax return for such tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the Internal Revenue Service. The Debtors reserve the right, to the extent they deem necessary and appropriate, to request similar determinations of any unpaid liability of the Estate for any other taxes (including, without limitation, any state or local taxes) incurred during the administration of its Chapter 11 Case by submitting a tax return for such other tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the appropriate governmental unit charged with the responsibility for collection or determination of such tax.

## THE DEBTORS AND THEIR CHAPTER 11 FILINGS

### Background

In February of 2017, NEO Accounting & Tax Services ("NEO") and Pearl Road Real Estate ("Pearl") purchased the assets of Lou-Ray Associates, Inc. ("Lou Ray"). NEO was intended to be the operating company and purchased the furniture, equipment, and clients of the accounting practice of Lou-Ray for $2,304,000. Pearl was intended to be the land owner company and purchased the office building located at 1378 Pearl Road and two rental houses located at 1388 Pearl Road and 1392 Pearl Road for $1,000,000. In order to purchase the firm and real property, Gotit Group Brunswick ("Gotit") bought a 15% equity position in NEO and Pearl that provided the down payment of $400,000. The remainder of the purchase price, loan issue costs and start up costs were paid through an SBA loan through Key Bank and seller notes of $100,000 on the building and $160,000 on the accounting practice. The Gotit equity investment terms were, in hindsight, detrimental to the firm because, although Gotit was only a 15% equity owner, any distributions made to the Debtors' other owner Brett Mangon ("Mangon") also had to be paid to Gotit in equal amounts.

Also, during the purchase due diligence phase, Mangon was provide with financial information of Lou-Ray with revenue amounts that were significantly higher than anything NEO every realized. Mangon was shown average annual revenue of $2,100,000. NEO never did better than $1,700,000 in any year. In addition, NEO was unaware of the demographics of Lou-Ray's client base. Many of the business clients were older and would soon sell their businesses. When a CPA firm is purchased in general the purchaser can expect a 15%-20% loss of revenue from clients leaving. NEO experienced that type of loss as well as significant losses from clients that

sold their business shortly after NEO purchased the business. The loss of revenue lead to the opening and use of the line of credit that is currently at its maximum borrowing amount of $250,000.

The COVID-19 pandemic led to further loss of clients due to closure of many restaurant clients and other clients that simply could not continue in business through the pandemic. NEO obtained an EIDL loan that it was used to pay down part of the original SBA loan with Key Bank ($716,216.23), buy out Gotit's equity position ($600,000), and fund operations during the pandemic. NEO's annual revenue has stabilized at around $1.2M to $1.3M per year. However, that revenue is simply not enough to cover monthly debt service costs of almost $45,000 per month as well as cover costs of operations such as wages, software costs, etc.

Because of NEO and Pearl's in ability to service its current debt structure, a Chapter 11 proceeding was determined by the Debtor's management as the best and only chance to save the Debtor's business and restructure its debts.

**The Debtors' Secured Debt**

The Debtor financed operations through credit agreements with KeyBank NA, the Small Business Administration, and JP Morgan Chase Bank. Set out below is a list of the Debtor's secured creditors and the amount of their debts as of the Petition Date:

| Secured Creditors | Petition Date Debt Amount |
|---|---|
| KeyBank NA | $2,046,916.00 |
| Small Business Administration | $1,945,700.00 |
| JP Morgan Chase Bank | $63,450.88 |

**Post-Petition Operations**

During the postpetition period, the Debtors have continued to operate and manage their businesses. During their operation under protection of the Bankruptcy Court, the Debtors also have taken significant steps toward reorganizing their finances.

The Debtors reduced operating costs during their chapter 11 case. This enabled the Debtors to pay adequate protection payments to KeyBank NA and pay additional expenses related to their Chapter 11 Case. The Debtors have returned to profitability as shown on Exhibit 3 attached hereto and will be able to make a meaningful distribution to its unsecured creditors.

**The Debtor's Professional Advisors**

The Court authorized the Debtors' retention of: (a) Anthony J. DeGirolamo to serve as Debtors' counsel.

**Bar Dates**

**General Bar Date**

On August 7, 2023, the Court entered the Bar Date Order, which established the bar date for filing of Proofs of Claim and approved the form and manner of notice of the bar date. Generally, Proofs of Claim and Interests were required to be filed no later than October 2, 2023, for non-governmental creditors and January 23, 2024, for governmental entities. The Debtors' counsel served a notice of the bar date on known creditors on July 25, 2023.

**Administrative Bar Date**

Through the Confirmation Order the Debtors will seek the following bar dates for administrative claims:

- 30 days after the Confirmation Date for all administrative expenses of the Debtors' chapter 11 cases, with the specific exception of a request for compensation and/or reimbursement of expenses for the Debtors' retained professionals.

- 45 days after Confirmation Date for requests for compensation and reimbursement or expenses for the Debtors' retained professionals.

**Extension of Time to Assume or Reject Real Property Leases**

Section 365 of the Bankruptcy Code requires the Debtors to seek to assume or reject any unexpired leases of non-residential real property to which it is a party within 60 days of the commencement of its bankruptcy case. Pursuant to Article VIII of the Plan, the Debtors will assume or reject all remaining executory contracts and non-residential leases on the Effective Date.

**Investigation of Avoidance Actions**

The Debtors intend to investigate actions hey may have under chapter 5 of the Bankruptcy Code, including actions under sections 544, 542 and 548 of the Bankruptcy Code (collectively "Avoidance Actions"). Pursuant to the terms of the Plan, the right to pursue the Avoidance Actions will be reserved by the Debtors. The Debtor will have the right, but not the obligation to pursue any Avoidance Action. The Debtors are not aware of any viable Avoidance Actions.

**THE DEBTORS' PLAN**

**Vesting of Property**

On the Confirmation Date, all property of the Estate will vest in the Debtors, free and clear of all security interests, liens, encumbrances, charges and/or interests, except as specifically set forth in the Plan. The Plan provides that certain holders of Allowed Secured Claims will retain their liens and mortgages until paid as provided under the Plan.

**Preservation of Rights of Action**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Debtors, and their successors and assigns retain and may enforce any claims, rights, and causes of action that the Debtors or the Estates may hold against any entity, including, but not limited to, any Avoidance Actions. The Debtors in their capacity as reorganized Debtors shall be authorized and empowered to prosecute and/or settle any such claims, rights, or causes of action.

**Releases by Recipients of Distributions**

Except as otherwise provided in the Plan, each entity receiving a distribution pursuant to the Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown Claims of any nature that such entity has, had, or may have, prior to Effective Date against the Debtors to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively, or otherwise, of any Claim, debt, right or cause of action released or to be released pursuant to the Plan.

**Release of Liens**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate, or against property that is collateral for any obligation of the Debtors will be fully released and discharged, and all of the rights, title, and interests of any holder of such mortgages, deeds of trust, liens or other security interests will revert to the Debtors and their successors and assigns.

**Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

The Debtors will be authorized to: (a) execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents contemplated by or entered into in connection with the Plan; and (b) take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors will be authorized to certify or attest to any of the foregoing actions. Pursuant to section 1146(c) of the Bankruptcy Code: (a) the creation or transfer of any mortgage, deed of trust, or other security interest; (b) the making or assignment of any lease or sublease; (c) the making or delivery of any deed or other instrument, in furtherance of or in connection with the Plan, including any agreements of consolidation, deeds, bills of sale, assignments, assumptions, or delegations of any asset, property, right, liability, duty or obligation; or (d) the making of any instruments of transfer executed in connection with any of the foregoing will not be subject to any stamp tax, real estate transfer tax, or similar tax.

11

# RISK FACTORS

The risk factors enumerated below assume Confirmation and the consummation of the Plan, and the transactions contemplated by the Plan, and do not include matters that could prevent Confirmation. [See "OVERVIEW OF THE PLAN -- Conditions Precedent to Confirmation and Consummation of the Plan" and "VOTING AND CONFIRMATION OF THE PLAN" for discussions of such matters. ] Prior to voting on the Plan, each holder of a Claim against the Debtors should carefully consider the risk factors enumerated or referred to below as well as all of the information contained in this Disclosure Statement.

## Ability to Make Plan Distributions

The following is an estimation of claims and administrative expenses, which the Debtor will have to pay in cash on or about the Effective Date:

Administrative Claims, including
Professional fees:                     $10,000.00

The Debtors anticipate that they will have sufficient funds to make all of the distributions to holders of Administrative Claims on the effective date. The funds for such distributions and funds for distributions to holders of Allowed Class B Claims will come from the proceeds of the Debtors' ordinary income, proceeds from sales of property, and proceeds of Avoidance Actions, if any, and paid over time.

The Debtors' ability to make the distributions described above is dependent upon, among other things, the allowance of certain Claims in the amounts the Debtors have projected, which amounts are described below. In addition, distributions at the projected levels depend upon the Debtors' ability to generate income as anticipated in the Plan.

## Allowance of Claims

The ability of the Debtors to make the distributions under the Plan at the levels contemplated by the Plan depends upon certain Claims being allowed at levels projected by the Debtors including the following:

## Administrative Claims

In calculating distributions under, and in determining the feasibility of, the Plan, the Debtors have estimated Administrative Claims to be approximately $10,000, including fees of Professionals. If Allowed Administrative Claims exceed the Debtors' estimates by a material amount, the Debtors may have insufficient funds to make distributions under the Plan; the Plan could be determined to be not feasible; and the Court could refuse to confirm the Plan.

# DISTRIBUTIONS UNDER THE PLAN

**Means of Cash Payments**

Cash payments made pursuant to the Plan will be in U.S. dollars by checks drawn on a domestic bank selected by the Debtors or by wire transfer from a domestic bank, at the option of the Debtors.

**Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtors will comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements, and the Debtors will be authorized to pay excise or other employer-related taxes. The Debtors will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of the Plan, each entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

**Setoffs**

Pursuant to section 553 of the Bankruptcy Code, or any applicable nonbankruptcy law, the Debtors may, set off against any claims, debts, rights and causes of action of any nature that the Debtors, or any entity to be formed under the Plan, may hold against the holder of an Allowed Claim, and the distributions to be made pursuant to the Plan on an Allowed Claim (before any distribution is made with regard to such Claim). Neither the failure to effect such a setoff, nor the allowance of any Claim hereunder, will constitute a waiver or release of any claims, debts, rights and causes of action against such holder.

**Treatment of Disputed Claims**

No payment or distribution will be made on a Claim if any portion of the Claim is disputed until all of the objections to the Claim, or portion of the Claim, have been determined by a Final Order of the Court. Any payment or distribution that otherwise would have been made on account of such Claim had it been allowed, will be held in reserve by the Debtors (in the "Unpaid Claims Reserve") pending a determination of the allowability of the Claim.

In the event that a Disputed Claim is resolved by the allowance of such Claim in whole or in part, the Debtors will make the appropriate distribution to the holder of the Claim from the Unpaid Claims Reserve in accordance with the provisions of the Plan. When all Disputed Claims have been allowed or disallowed, all cash then remaining in the Unpaid Claims Reserve will be distributed Pro Rata to holders of Allowed Class B Claims.

13

**Authority to Prosecute Objections**

Except as otherwise provided in the Plan or pursuant to a Final Order, after the Effective Date, only the Debtors will have the authority to file objections or settle, compromise, withdraw, or litigate to judgment objections to Claims.

## GENERAL INFORMATION REGARDING THE PLAN

**Classification and Treatment of Claims**

### In General

All Claims, except Administrative Claims and Priority Tax Claims, are placed in the Classes set out in the Plan, as summarized below. In accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**Treatment of Impaired Classes of Claims**

**Class A-1 through A-4**

In full satisfaction of their Allowed Claims, the holders of Allowed Clams in Classes A-1 through A-4 shall receive the following:

    a.  The holder of Allowed Claims in Class A-1 (Treasurer) shall receive the following in full satisfaction of its Allowed Secured Claims:

        i.  The Debtor will pay the Treasurer in full on the date when real estate taxes are ordinarily due. The Treasurer shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-1 Collateral").

    b.  The holder of Allowed Claims in Class A-2 (Key) shall receive the following in full satisfaction of its Allowed Secured Claims:

        i.  The Debtor will pay: $1,091,825.00, or the amount owed on the Effective Date, whichever is less, to Key on the promissory notes dated February 16, 2017, and April 12, 2017, as they may have been amended from time to time (the "Key Notes"). On the Effective Date, the Key Notes shall bear interest at a simple interest rate of 10.50% (prime rate plus 2.00%) per annum, amortized over a term of 180 months, with equal monthly payments due on the 15th day of each month in the amount of $12,069.02 on its obligations to Key, and a balloon payment of the remaining unpaid balance of the Key Allowed Secured Claim payable on the Due Date, which shall be the last day of the 60th month after the Effective Date. Key shall retain its security interest in the collateral with the same validity and priority as on

the Petition Date (the "A-2 Collateral"). Other than the foregoing, all other terms and conditions of the Key Notes, and related Loan Agreement, Mortgage and Security Agreements shall remain in full force and effect, including but not limited to the obligation of timely financial reporting.

    ii.  The balance, if any, of Key's Claim shall be paid as a Class B Claim.

  c.  The holder of an Allowed Claim in Class A-3 (SBA) shall receive the following in full satisfaction of its Allowed Secured Claims:

    i.  SBA's Claim shall be paid as a Class B Claim.

    ii.  SBA's security interest in the Debtor's assets shall be cancelled and released upon the confirmation of this Plan.

  d.  The holder of an Allowed Claim in Class A-4 ("Chase") shall receive the following in full satisfaction of its Allowed Secured Claims:

    i.  The Debtor will pay: $60,362.00 to Chase on the retail installment contract dated September 16, 2022, (the "Chase Note") pursuant to the original terms of the Chase Note. Chase shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-4 Collateral").

**Class B Claims:**

In full satisfaction of Allowed Class B Claims, holders of Allowed Claims in Class B will receive the following treatment:

Each holder of a Class B Allowed Claim shall receive in full satisfaction of its Allowed Class B Claim Distributable Cash from the Debtors plus the new value contribution by Brett Mangon. The payment by the Debtors to holders of Allowed Class B Claims shall be made in five (5) annual payments beginning in the first year following the Effective Date, but in no event, commencing later than June 30, 2024, and on the 30th day of June each year thereafter. Total payments of Distributable Cash shall be not less than One Hundred Eighty-seven Thousand Two Hundred Sixty-two and 00/100 Dollars ($187,262.00), less administrative expenses of the Chapter 11 Case over the term of the Plan. Should any holder of an Allowed Class A-1 through A-4 Claim become entitled to participate in payment of Distributable Cash, then each holder of an Allowed Class B Claim will receive payments of a Pro Rata portion of Distributable Cash plus the new value contribution by Brett Mangon thereafter.

**Class C Claims:**

In full satisfaction of their Allowed Class C Claims, holders of Allowed Class C Claims will receive the following:

Each holder of a Class C Allowed Claim shall receive no distributions under this Plan because the Debtor Pearl Road Real Estate, LLC is projected to have no net income during the term of the Plan.

**Class D Interests:**

Each holder of an Interest shall retain its Interests in exchange for a new value contribution of $10,000.00 to Distributable Cash as described on pg. 4 above.

## No Accrual of Postpetition Interest

Except as otherwise provided in the Plan, no holder of an Allowed Claim will be entitled to the accrual of postpetition interest, or the payment by the Debtors of postpetition interest on account of such Claim for any purpose.

## Payment of Administrative Claims

### In General

Except as specified in Article III of the Plan, and subject to the Confirmation Order, and unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, each holder of an Allowed Administrative Claim will receive from the Debtors, cash equal to the amount of such Allowed Administrative Claim on the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, in full satisfaction of its Claim.

### Statutory Fees

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports. The Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. All post confirmation quarterly reports shall include all disbursements made by the Reorganized Debtors during the applicable quarter.

### Ordinary Course Liabilities

Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of business will be paid by the Debtors, following the Effective Date pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims; but only if such Administrative Claims are supported by the Debtors' books and records. If such Administrative Claims are not so supported, then the Debtors shall notify such creditor withing ten (10) days of the Confirmation Date and holders of such Administrative Claims must comply with the provisions of Article III.4 of the Plan.

### Bar Date for Administrative Claims

#### *General Bar Date Provisions*

Requests for payment of Administrative Claims must be Filed and served in accordance with the Confirmation Order. Holders of Administrative Claims are required to File and serve a request for payment of such Claims. If any Claim is not Filed and served by the Claim Bar Date it shall be forever barred and will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtors, and the requesting party by 20 days after the Filing of the applicable request for payment of the Administrative Claim.

#### *Professional Compensation*

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered before the Confirmation Date (including compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Debtors' Chapter 11 Case) must File and serve on the Debtors, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Confirmation Date. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors, and the requesting partyno later than 20 days after the filing of the applicable request for payment of the Administrative Claims.

### Payment of Priority Claims and Priority Tax Claims

Unless such holder and the Debtors, or their successors or assigns, agree to other terms, or a Final Order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Claim and each holder of an Allowed Priority Tax Claim will be paid, on account of such claim, as follows:

Subject to Article III of the Plan, the Debtors will pay, in full, in cash no later than sixty (60) days after the Effective Date, only those Allowed Priority Claims and Allowed Priority Tax Claims.

### Executory Contracts and Unexpired Leases

#### Assumptions and Rejections Generally

Except as otherwise provided in the Plan, the Confirmation Order, or a Final Order, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors will assume or reject all executory contracts and unexpired leases listed on the Debtors' schedule of executory contracts and unexpired leases filed in this case.

17

**Claims Arising From Rejection; Bar Date For Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim will be forever barred and will not be enforceable against the Debtor and its respective property unless a proof of Claim is timely Filed and served on the Debtors within sixty (60) days after the Confirmation Date and pursuant to the procedures specified in the Bar Date Order or another order of the Court.

**Approval of Assumptions and Rejections**

The Confirmation Order will constitute an order of the Court approving the assumptions and rejections described in the Plan pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The order of the Court approving this Disclosure Statement, the Confirmation Order, or another order of the Court entered on or prior to the Confirmation Date may specify additional procedures for providing notice to each party whose executory contract is being assumed pursuant to the Plan.

**Releases by Recipients of Distributions**

Except as otherwise provided in the Plan, each entity receiving a distribution pursuant to the Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown claims of any nature that such entity has, had or may have prior to the Effective Date against the Debtors to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, debt, right, or cause of action released or to be released under the Plan.

**Legal Effects of the Plan**

**Discharge**

Except as provided in the Plan or the Confirmation Order the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims, including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or the Confirmation Order, Confirmation will (a) discharge the Debtors from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan; and (b) terminate all interests and other rights, if any, of equity security holders in the Debtors.

As of the Confirmation Date, except as provided in the Plan or Confirmation Order, all entities will be precluded from asserting against the Debtors, the Estates, and any entity to be formed under the Plan, any other or further Claims, debts, rights, causes or action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided

18

in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all such interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged Claim.

### Injunction

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim, or other debt or liability that is discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Estates, or the property of the Debtors; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estates, or the property of the Debtors; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, the Estates, or the property of the Debtors; (d) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Debtors, or the Estates or the property of the Debtors; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

### Effect of Defaults Under the Plan

In the event the Debtors are unable to consummate the Plan on the terms set forth therein, creditors may reopen the Chapter 11 Case and seek the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or the dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code.

Default Provisions Applicable to Class A-1 through A-4:

Should the Debtors default on any provision of this Plan or loan documents related to a Class A-1 through A-4 Claim, then such holder of a Class A-1 through A-4 Claim to whom the Debtors are in default shall be entitled to its state law remedies without resort to seeking relief from the injunction provided in this Plan in the Court, in addition to remedies that may be available under the Bankruptcy Code.

### VOTING AND CONFIRMATION OF THE PLAN

The Bankruptcy Code requires, to confirm the Plan, that the Court make a series of findings concerning the Plan and the Debtors, including that:

(a)     the Plan complies with applicable provisions of the Bankruptcy Code including: (1) the Plan has classified Claims in a permissible manner; and (2) the disclosure required by section 1125 of the Bankruptcy Code has been made;

19

(b)     the Debtors, as the Plan proponents, have complied with applicable provisions of the Bankruptcy Code;

(c)     the Debtors have proposed the Plan in good faith and not by any means forbidden by law;

(d)     any payment made, or to be made, by the Plan proponent or any person issuing securities acquiring property under the Plan, for services, costs, and expenses in the Debtors cases, or in connection with the Debtors' cases, has been approved, or subject to approval by the Court as reasonable;

(e)     the disclosures required under section 1129(a)(5) of the Bankruptcy Code concerning the identity and affiliations of persons who will serve as officers, directors, and voting trustees of the Debtors;

(f)     the Plan has been accepted by the requisite votes of creditors (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code (See "- Confirmation" and "- Acceptance or Cramdown"));

(g)     the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to Creditors on account of such Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan;

(h)     if a Class of Claims is impaired under the Plan, at least one class of impaired Claims has voted to accept the Plan;

(i)     the Plan is feasible, and Confirmation will likely not be followed the by a liquidation under chapter 7 or the need for further financial reorganization of the Debtors; and

(j)     all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on Confirmation, have been paid (or the Plan provides for the payment of such fees on the Effective Date).

The Debtors anticipate that the Court will make such findings.

**Absolute Priority Rule**

Additionally, the Debtors' owner, Brett Mangon, is proposed to retain his membership units in the Debtors in exchange for a $10,000.00 new value contribution to Distributable Cash under the Plan and will continue working for and generating revenue for the Debtors.  The Bankruptcy Code requires that either: (i) no lower class of Claim or Interest holder may receive or retain anything under the plan unless all senior Classes are paid in full; or (ii) the

Plan is accepted by all Classes. The Debtors believe the plan will be accepted by all Classes and encourage all Claim holders to vote in favor of the Plan. In the event the Plan is not accepted by all Classes, the Plan may fail in the event the Debtor is not be able to obtain confirmation of the Plan through the cram down provisions of section 1129(b) or overcome the absolute priority rule under the Bankruptcy Code by contributing $10,000.00 of new value to Distributable Cash and by showing that the new value contribution exceeds the value of the Interests retained under the Plan.

**Voting Procedures and Requirements**

Pursuant to the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms and provisions of a plan of reorganization are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing default and reinstating maturity. Under the Plan, Classes of Claims that are not impaired are *not* entitled to vote on the Plan and are deemed to have accepted the Plan. In addition, Classes of Claims that receive no distributions under the Plan are *not* entitled to vote on the Plan and are deemed to have rejected the Plan, unless such Class otherwise indicates acceptance. The classification of Claims is summarized, together with notations as to whether each Class of Claims is impaired or unimpaired, under the caption "OVERVIEW OF THE PLAN - Summary of Classes and Treatment of Claims."

Pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3018, the Court may estimate and temporarily allow a Claim for voting or other purposes. The Debtors may seek an order of the Court temporarily allowing, for voting purposes only, certain Disputed Claims.

In addition, the following voting procedures and standard assumptions will be used for purposes of tabulating ballots:

(a)     The amount of a Claim that will be used to determine votes for or against the Plan will be either (a) the Claim amount listed on the schedules of liabilities Filed with the Court unless such Claim is listed on the schedules of liabilities as contingent, unliquidated, or disputed, (b) the liquidated amount specified in a proof of claim timely Filed with the Court that is not the subject of an objection, or (c) the liquidated amount specified in a Final Order. If the holder of a Claim submits a Ballot, but: (a) such holder has timely Filed a Proof of Claim, *and* such holder's Claim is the subject of an objection; or (b) such holder's Claim is listed on the schedules of liabilities as contingent, unliquidated, or disputed, then the Ballot will not be counted for purposes of determining acceptances or rejections of the Plan, in accordance with Rule 3018, unless the Court has temporarily allowed the Claim for the purpose of accepting or rejecting the Plan in accordance with Bankruptcy Rule 3018.

(b)     Whenever a holder of a Claim casts more than one Ballot voting the same Claim prior to the Voting Deadline, the latest dated Ballot received prior to the Voting Deadline will be deemed to supersede and revoke any prior Ballot.

21

(c)     Holders of Claims must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split their votes.  Accordingly, the Debtors will treat as an acceptance any Ballot (or multiple ballots with respect to multiple Claims within a single Class) that partially rejects and partially accepts the Plan.

(d)     The Debtor is seeking an order through confirmation of its Plan providing that ballots that fail to indicate an acceptance or rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, may be tabulated as an acceptance unless the claim on which the Ballot is cast is the subject of an objection or is listed on the schedules of liabilities as contingent, unliquidated, or disputed.

(e)     If no vote to accept or reject the Plan is received with respect to a particular class, the Debtors request that such class be deemed to have voted to accept the Plan.

**VOTING ON THE PLAN BY EACH HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN IS IMPORTANT.  IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS, YOU MAY RECEIVE MORE THAN ONE BALLOT.  YOU SHOULD COMPLETE, SIGN, AND RETURN EACH BALLOT YOU RECEIVE.  PLEASE FOLLOW THE DIRECTIONS CONTAINED ON THE ENCLOSED BALLOT CAREFULLY.**

Votes cannot be transmitted orally.  Accordingly, you are urged to return your signed and completed ballot promptly.

**IF YOU HAVE A CLAIM THAT IS IMPAIRED UNDER THE PLAN ENTITLING YOU TO VOTE AND YOU DID NOT RECEIVE A BALLOT, RECEIVED A DAMAGED BALLOT, OR LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS DISCLOSURE STATEMENT OR THE PLAN, PLEASE CALL OR WRITE TO ANTHONY J. DEGIROLAMO, ESQ., 3930 FULTON DR., N.W., STE. 100B CANTON, OHIO 44718, (330) 305-9700.**

**Confirmation Hearing**

The Bankruptcy Code requires that the Court, after notice, hold a hearing on whether the Debtors have fulfilled the Confirmation requirements of section 1129 of the Bankruptcy Code. The Confirmation hearing will be held before the Honorable Alan Koschik, in the 2nd Floor Courtroom, United States Bankruptcy Court, Northern District of Ohio, Eastern Division, Seiberling Federal Courthouse, 2 South Main St., Akron, Ohio 44308.  The Confirmation hearing may be adjourned from time to time by the Court without further notice, except for an announcement of the adjourned date made at the Confirmation hearing.  Any objection to Confirmation must be made in writing, and must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Any such objections must be Filed and served upon the persons designated in the notice of the Confirmation hearing.

**Confirmation**

At the Confirmation hearing, the Court will confirm the Plan only if the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for Confirmation are that the Plan: (a) is accepted by the requisite holders of Claims in impaired Classes or, if not so accepted, is "fair and equitable" and "does not discriminate unfairly" as to the nonaccepting Class; (b) is in the "best interests" of each holder of a Claim in each impaired Class; (c) is feasible; and (d) complies with the applicable provisions of the Bankruptcy Code.

**Acceptance or Cramdown**

A plan is accepted by an impaired class of claims if holders of at least two-thirds in dollar amount and a majority in number of claims of that class vote to accept the Plan. Only those holders of claims who actually vote (and are entitled to vote) to accept or to reject a plan count in this tabulation. A plan is accepted by an impaired class of interests if holders of at least two-thirds of the number of shares in such class vote to accept the plan. As with claims, only those holders of interests who actually return a ballot count in this tabulation. In addition to this voting requirement, section 1129 of the Bankruptcy Code requires that a plan be accepted by each holder of a claim or interest in an impaired class or that the plan otherwise be found by the Court to be in the best interests of each holder of a claim or interest in an impaired class. See "VOTING AND CONFIRMATION OF THE PLAN - Best Interests Test." In addition, the impaired classes must accept the Plan for the Plan to be confirmed without application of the fair and equitable test in section 1129(b) of the Bankruptcy Code discussed below. The Bankruptcy Code contains provisions for confirmation of a plan even if it is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code. As indicated above, a plan may be confirmed under the cramdown provisions if, in addition to satisfying the other requirements of section 1129 of the Bankruptcy Code, it (a) is "fair and equitable" and (b) "does not discriminate unfairly" with respect to each class of claims or interests that is impaired under, and has not accepted, a plan. The "fair and equitable" standard, also known as the "absolute priority rule," requires, among other things, that unless a dissenting class of unsecured claims or class of interests receives full compensation for its allowed claims or allowed interests, no holder of allowed claims or interests in any junior class may receive or retain any property on account of such claims or interests. With respect to a dissenting class of secured claims, the "fair and equitable" standard requires, among other things, that holders either (i) retain their liens and receive deferred cash payments with a value as of an effective date equal to the value of their interest in property of the estate or (ii) otherwise receive the indubitable equivalent of their secured claims.

The Debtors believe that, if necessary, the Plan may be crammed down over the dissent of certain Classes of Claims, in view of the treatment proposed for such Classes. If necessary and appropriate, the Debtors intend to modify the Plan to permit cramdown of dissenting Classes of Claims. No assurance exists, however, that the "cramdown" requirements of section 1129(b) of the Bankruptcy Code would be satisfied even if the Plan treatment provisions were amended or withdrawn as to one or more creditors or interest holders.

The requirement that the Plan not "discriminate unfairly" means, among other things, that a dissenting Class must be afforded substantially similar and equal treatment as provided to other Classes of equal rank. The Debtors do not believe that the Plan discriminates unfairly against any Class that may not accept or otherwise consent to the Plan.

Subject to the conditions set forth in the Plan, a determination by the Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code will not limit or affect the Debtors' ability to modify the Plan to satisfy the provision of section 1129(b) of the Bankruptcy Code.

The Debtors anticipate that the Plan will be accepted by all Classes of Claims. As a result, the absolute priority rule will not be applicable. Rather, with the acceptance of the Plan by all Classes of impaired Claims, the Debtors will be able to achieve a Confirmation.

**Best Interests Test**

Notwithstanding acceptance of the Plan by each impaired Class, to confirm the Plan, the Court must determine that the Plan is in the best interests of each holder of a Claim in any impaired Class that has not voted to accept the Plan. Accordingly, if an impaired Class does not vote unanimously to accept the Plan, the "best interests" test requires that the Court find that the Plan provides to each member of such impaired Class a recovery on account of each member's Claim that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if the Debtors' assets were liquidated under chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each impaired Class of Claims would receive if the Debtors assets were liquidated under chapter 7 of the Bankruptcy Code, the Court must first determine the aggregate dollar amount that would be available if the Chapter 11 Case were converted to a chapter 7 case under the Bankruptcy Code and the Debtors' assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value of the Debtors would consist of the net proceeds from the disposition of the assets of the Debtors augmented by any cash held by the Debtors. The Liquidation Value available to creditors holding unsecured Claims would then be reduced by, among other things, (a) the Claims of secured creditors to the extent of the value of their collateral, (b) the costs, fees, and expenses of the liquidation, as well as other administrative expenses of the Debtors' chapter 7 cases, (c) unpaid Administrative Claims of the Chapter 11 Case, (d) Priority Tax Claims, including prepetition state and federal tax claims entitled to priority treatment, and (e) Class A Claims. The Debtors' costs of liquidation of a chapter 7 case, thus would include the compensation of trustees, as well as their counsel, and other professionals retained by such trustees, asset disposition expenses, applicable taxes, litigation costs, Claims arising from the operation of the Debtors businesses during the pendency of the chapter 7 cases, and all unpaid Administrative Claims incurred by the Debtor during the Chapter 11 Case that are allowed in the chapter 7 case. The liquidation itself would trigger certain priority Claims, and would likely accelerate the payment of other priority Claims, such as certain deferred income tax obligations, that would otherwise be payable in the ordinary course of business. These priority Claims would be paid in full out of the net liquidation proceeds, after payment of Secured Claims,

before the balance would be made available to pay unsecured Claims. The Debtors believe that the liquidation would also generate a significant increase in unsecured Claims, such as executory contract and unexpired lease rejection Claims and tax and other governmental Claims, on an accelerated basis.

A liquidation analysis of the Debtors is set forth in Exhibit 2 to this Disclosure Statement. The liquidation analysis is based on a number of estimates and assumptions as follows:

These estimates and assumptions are subject to significant uncertainties, including estimates and assumptions relating to the proceeds of sales of assets, the timing of such sales, and values and certain tax matters. While the Debtors believe that these estimates and assumptions are reasonable for the purpose of preparing a hypothetical chapter 7 liquidation analysis, there can be no assurance that such estimates and assumptions would be valid if the Debtors' assets were, in fact, liquidated.

**The Debtors believe, and their liquidation analysis demonstrates, that a chapter 7 liquidation of the Debtors' assets would result in a recovery to holders of Allowed Class B or C Claims of no more than $0 less amounts paid to holders of Allowed Administrative an Class A Claims, and Priority Tax Claims. That is because, in a liquidation, the Debtors' unencumbered assets would generate insufficient proceeds to pay the costs of liquidation, and holders of Administrative and Priority Claims.**

### Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). For purposes of determining whether the Plan meets this requirement, the Debtors have analyzed their ability to meet their respective obligations under the Plan and the prospects of the business to be operated by the Debtors. The Debtors believe that the Plan meets the feasibility requirements of the Bankruptcy Code.

## FEDERAL INCOME TAX CONSIDERATIONS
## OF CONSUMMATION OF THE PLAN

### General

A DESCRIPTION OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN IS PROVIDED BELOW. THIS DESCRIPTION IS BASED ON THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), THE TREASURY REGULATIONS ISSUED THEREUNDER, AND ADMINISTRATIVE DETERMINATIONS OF THE IRS IN EFFECT AS OF THE DATE OF THIS DISCLOSURE STATEMENT. CHANGES IN THESE AUTHORITIES, WHICH MAY HAVE RETROACTIVE EFFECT, OR NEW INTERPRETATIONS OF EXISTING AUTHORITY MAY CAUSE THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO DIFFER MATERIALLY FROM THE

CONSEQUENCES DESCRIBED BELOW. MOREOVER, NO RULINGS HAVE BEEN REQUESTED FROM THE IRS, AND NO LEGAL OPINIONS HAVE BEEN REQUESTED FROM COUNSEL WITH RESPECT TO ANY TAX CONSEQUENCE OF THE PLAN. NO TAX OPINION IS GIVEN BY THIS DISCLOSURE STATEMENT. THIS DESCRIPTION DOES NOT COVER ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTORS OR HOLDERS OF CLAIMS. THE DESCRIPTION, MOREOVER, IS LIMITED TO FEDERAL INCOME TAX CONSEQUENCES.

FOR THESE REASONS, THE DESCRIPTION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN.

**Federal Income Tax Consequences to Debtors**

### Net Operating Loss Carryforwards

Tax losses from the Debtors' business have resulted in the Debtor having a significant net operating loss carry forward ("NOL") for federal income tax purposes. In general, an NOL may be carried forward up to 20 years to offset income that would otherwise be subject to federal income tax. The NOL is subject to reduction or elimination for a number of reasons. First, the NOL could be reduced or eliminated as a result of audit adjustments arising from current or future IRS examinations of the Debtors' tax returns. Second, the NOL could also be reduced or eliminated by any cancellation of debt ("COD") income recognized by the Debtors as a result of the attribution reduction rules discussed below. Third, the NOL could also be reduced or eliminated by any gain recognized on the disposition of assets pursuant to the Plan.

In evaluating the effect of the NOL on the Debtors future tax liability, holders of Claims should note that the NOL carryforward amount and the annual limitation actually available to the Debtor each year if section 382 applies will depend upon facts about which there can be no certainty, including the Debtors' market value and the long-term tax-exempt rate on the Effective Date. The Debtors' actual income in future years, moreover, may be less than the amounts that have been projected, which would also reduce the present value of the NOL carryforward.

### Reduction of the Debtor's Indebtedness

Generally, the discharge of a debt obligation by a debtor for an amount less than the adjusted issue price gives rise to cancellation of indebtedness income ("COD"), which must be included in the Debtors' income. COD income is not recognized by a taxpayer that is a debtor in a chapter 11 case if the discharge is granted by the court or pursuant to a plan of reorganization approved by the court. The Plan, if approved, would enable the Debtors to qualify for this bankruptcy exclusion rule if they have any COD income.

26

If debt is discharged in a chapter 11 case, however, certain tax attributes otherwise available and of value to the debtor are reduced, in most cases by the principal amount of the indebtedness forgiven. Tax attributes subject to reduction include: (a) NOLs and NOL carryforwards; (b) most credit carryforwards; (c) capital losses and carryforwards; and (d) the tax basis of a debtor's depreciable and nondepreciable assets. These favorable attributes may therefore be reduced and would not be available to the Debtors in future years.

## Federal Income Tax Consequences to Holders of Claims

### General

The tax consequences of the Plan to a holder of a Claim will depend, in part, on the nature of the Claim, whether the holder is a corporation or an individual, the type of consideration received in exchange for the Claim, whether the holder reports income on the accrual or cash basis method, whether the holder has taken a bad debt deduction with respect to such Claim, and whether the holder receives distributions under the Plan in more than one taxable year.

Holders of Claims will likely recognize gain or loss equal to the amount realized under the Plan in respect of their Claims less their respective tax bases in their Claims. The amount realized for this purpose will generally equal the sum of the cash and the fair market value of any other consideration received under the Plan in respect of their Claims. Any gain or loss recognized in the exchange will be capital or ordinary depending on the status of the Claim in the holder's hands. If a Claim is restructured under the Plan, the Original Issue Discount ("OID") rules contained in Section 1271 through 1274 of the Code will apply to the restructured debt. The OID rules require that all applicable debt instruments bear a minimum rate of interest that accrues regularly over time. Under section 1272 of the Code, this regular accrual is an economic accrual based on a minimum yield to maturity of the debt instrument. To the extent that the terms of a restructured debt do not provide for such accrual, the OID rules convert what may be denoted as principal into interest, which is deemed to accrue regularly over time, regardless of when it is actually paid. Even if a restructured debt instrument bears sufficient interest, if such interest is not paid regularly, the OID rules require that the interest be accrued so that it is spread regularly over the term of the restructured debt instrument. Thus, the OID rules may require a holder of a Claim to report income in excess of cash interest received, even when no cash interest is received.

### Bad Debt Deduction

A holder who, under the Plan, will receive in respect of a Claim an amount less than the holder's tax basis in such Claim will most likely be entitled in the year of receipt, or in an earlier year, to a bad debt deduction in some amount under section 166(a) of the Code. The rules governing the timing and amount of bad debt deductions place considerable emphasis on the facts and circumstances of the holder, the obligor, and the instrument with respect to which a deduction is claimed; holders of Claims are therefore urged to consult their tax advisors with respect to their ability to take such deduction.

## RECOMMENDATION AND CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Debtors believe that the Confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Debtors urge all holders of Claims to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before the Voting Deadline.

January 15, 2024

NEO ACCOUNTING &
TAX SERVICES, LLC
/s/ Brett Mangon
By: Brett Mangon, Member

PEARL ROAD REAL ESTATE, LLC

/s/ Brett Mangon
By: Brett Mangon, Member

28

**EXHIBIT 1**

**<u>PLAN OF REORGANIZATION</u>**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, AKRON**

```
-------------------------------------------------------x
In re:                                    :    Case No. 23-50868
                                          :    Jointly Administered
NEO ACCOUNTING                            :
& TAX SERVICES, LLC et al.¹               :    Chapter 11
                                          :
                                          :    Judge Alan Koschik
                                          :
          Debtors and                     :
          Debtors-in-Possession.          :
                                          :
-------------------------------------------------------x
```

**DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION**

Dated: December 4, 2023

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
3930 Fulton Drive N.W., Suite 100B
Canton, Ohio 44718
Telephone:  330-305-9700
Facsimile:  330-305-9713
E-mail:  ajdlaw@sbcglobal.net

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

---

¹     The Debtors are NEO Accounting & Tax Services, LLC (81-4592974) and Pearl Road Real Estate, LLC (81-4598361) Case No. 23-50869.

# TABLE OF CONTENTS

*INTRODUCTION*................................................................................................7

*ARTICLE I*......................................................................................................7

*DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME*....7

   **A.**   **Defined Terms**...............................................................................7

   **B.**   **Rules Of Interpretation and Computation Of Time**.........................14

       1.   Rules of Interpretation ...........................................................14

       2.   Computation of Time..............................................................15

       3.   Governing Law......................................................................15

*ARTICLE II*...................................................................................................15

*CLASSIFICATION OF CLAIMS*.......................................................................15

   **A.**   **In General**...................................................................................15

   **B.**   **Claims Against the Debtors**..........................................................15

       1.   Impaired Classes of Claims .....................................................15

           a.   Classes A-1 through A-4 Claims:.......................................15

           b.   Class B Claims:..............................................................16

           c.   Class C Claims:..............................................................16

       2.   CLASSES OF INTERESTS: .....................................................16

           a.   Class D Interests:...........................................................16

*ARTICLE III*..................................................................................................16

*TREATMENT OF UNCLASSIFIED CLAIMS*......................................................16

   **A.**   **Administrative Claims**.................................................................16

       1.   In General ...........................................................................16

       2.   Statutory Fees ......................................................................17

       3.   Ordinary Course Liabilities......................................................17

       4.   Bar Date for Administrative Claims ..........................................18

           a.   General Bar Date Provisions.............................................18

   b. Professional Compensation ................................................................................................18

    **B.** **Priority Tax Claims** ........................................................................................................**18**

**ARTICLE IV** ........................................................................................................................ **19**

**TREATMENT OF CLASSES OF CLAIMS** ..................................................................... **19**

    **A.** **Treatment of Impaired Class of Claims** ...................................................................... **19**

   1. Classes A-1 through A-4 ....................................................................................19

   5. CLASS B ...........................................................................................................21

    **7.** **CLASS D** .............................................................................................................**22**

    **B.** **No Accrual of Post-petition Interest** ........................................................................... **22**

**ARTICLE V** ......................................................................................................................... **22**

**ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF** ................................. **22**

**REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS** ...................... **22**

    **A.** **Impaired Classes of Claims Entitled to Vote** .............................................................. **22**

    **B.** **Acceptance by an Impaired Class of Claims** ............................................................... **22**

**ARTICLE VI** ....................................................................................................................... **23**

**MEANS OF EXECUTION** .................................................................................................. **23**

    **A.** **Introduction** .................................................................................................................. **23**

    **B.** **Restructuring Transactions** ......................................................................................... **23**

   1. Payments To Class B .........................................................................................23

   2. Payments to Classes A-1 through A-4 ................................................................ 24

    **C.** **Preservation of Rights of Action** ................................................................................. **24**

    **D.** **Releases by Recipients of Distributions** ...................................................................... **24**

    **E.** **Release of Liens** ............................................................................................................ **24**

**ARTICLE VII** ...................................................................................................................... **26**

**TREATMENT OF DISPUTED CLAIMS** .......................................................................... **26**

4

*ARTICLE VIII* ............................................................................................................ *26*

*EXECUTORY CONTRACTS AND UNEXPIRED LEASES* ............................................ *26*

*ARTICLE IX* ............................................................................................................. *27*

*CONDITIONS PRECEDENT TO CONFIRMATION AND*.......................................... *27*

*CONSUMMATION OF THIS PLAN* ......................................................................... *27*

   **A.**   **Conditions to Confirmation** ......................................................................**27**

   **B.**   **Conditions to Effective Date** .....................................................................**27**

*ARTICLE X*............................................................................................................... *27*

*CRAM-DOWN* ........................................................................................................... *27*

*ARTICLE XI* ............................................................................................................. *27*

*TITLE TO THE DEBTORS' PROPERTY* ................................................................... *27*

*ARTICLE XII* ........................................................................................................... *28*

*RETENTION OF CERTAIN CAUSES OF ACTION* .................................................. *28*

*ARTICLE XIII* .......................................................................................................... *28*

*DISCHARGE AND INJUNCTION* ............................................................................. *28*

   **A.**   **Discharge** ....................................................................................................**28**

   **B.**   **Injunction** ...................................................................................................**30**

*ARTICLE XIV* .......................................................................................................... *30*

*PROVISIONS GOVERNING DISTRIBUTIONS*......................................................... *30*

   **A.**   **General Distribution Provisions** ...............................................................**30**

      1.   Method of Distributions to Holders of Claims................................................30

      2.   Distributions to be Made on the Effective Date..............................................30

      3.   Timing and Calculation of Amounts to be Distributed ...................................31

          a.   Establishment of Distribution Dates......................................................31

          b.   Timing of Payment of Distributions of Less Than $10........................31

   **B.**   **Delivery of Distributions and Undeliverable or Unclaimed Distributions**.............................**32**

      1.   Delivery of Distributions in General................................................................32

      2.   Undeliverable Distributions .............................................................................32

**C.** **Means of Cash Payments**............................................................................................**33**

**D.** **Compliance with Tax Requirements**.........................................................................**33**

**E.** **Setoffs**.........................................................................................................................**33**

***ARTICLE XV***.....................................................................................................................***34***

***MISCELLANEOUS PROVISIONS***.................................................................................***34***

    A.    Retention of Jurisdiction..................................................................................34

    B.    Modification of this Plan .................................................................................34

    C.    Revocation of this Plan ...................................................................................34

    D.    Exculpation and Limitation of Liability..........................................................34

    E.    Severability of Plan Provisions.......................................................................35

    F.    Determination of Tax Liability .......................................................................35

    G.    Professionals Employed by Order of the Court. .............................................36

6

# INTRODUCTION

NEO Accounting & Tax Services, LLC and Pearl Road Real Estate, LLC, the above-captioned debtors and debtors in possession (the "Debtors"), hereby propose the following plan of reorganization pursuant to section 1121(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. The Plan represents the means by which the Debtors will exit bankruptcy. The Debtors believe that the Plan provides the best, and perhaps the only, means for their successful emergence from bankruptcy. **All holders of claims against the Debtors are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. The Debtors reserve the right to alter, amend, or modify this Plan pursuant to the terms of this Plan and the Bankruptcy Code**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A. Defined Terms

For purposes of this Plan, the following definitions shall apply, unless the context otherwise requires:

1.1. **"Administrative Claim"** shall mean a Claim for costs and expenses of administration allowed under section 503(b) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtors (such as payments for leased equipment and premises); (b) compensation for legal, financial, and business advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Bankruptcy Code, 28 U.S.C. §§ 1911-1930.

1.2.    **"Allowed Claim" or "Allowed Interest"** shall mean a claim or interest:  (a) proof of which has been filed with the Court on or before the claim bar dated fixed by the Court; or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount; or (c) or list of equity security holders filed with the Court pursuant to Bankruptcy Rule 1007(a); or (d) which is an administrative claim arising in the ordinary course of the Debtors' business and financial affairs, to which no objection is filed.  However, no Claim or Interest shall be included in this definition if it is a contingent claim or if an objection to the allowance thereof has been, or may be, filed within any applicable period of time fixed by the Bankruptcy Code, Bankruptcy Rules, or by order of the Court, unless and until such objection has been determined by a Final Order of the Court.

1.3.    **"Allowed Priority Claim"** shall mean a Priority Claim to the extent that it is, or has become, an Allowed Claim, which in any event, shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors shall be entitled on the Confirmation Date.

1.4.    **"Allowed Priority Tax Claim"** shall mean a Priority Tax Claim to the extent that it is, or has become, an Allowed Claim, which in any event, shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors shall be entitled on the Confirmation Date.

1.5.    **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien on property in which the Debtors have an interest, or which is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with section 506(a) of the Bankruptcy Code) of such creditor's interest in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8

1.6.    **"Avoidance Actions"** means any claim or cause of action of the Debtors or the Estates, including claims and causes of action pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code.

1.7.    **"Ballot"** shall mean ballots for voting in favor of or against Confirmation of the Debtors' Plan.

1.8.    **"Bankruptcy Code"** shall mean the Bankruptcy Code of 1978, effective October 1, 1979, as amended, as set forth in title 11 of the United States Code.

1.9.    **"Bankruptcy Rules"** shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Court, as now in effect or hereafter amended.

1.10.    **"Bar Date"** shall mean the applicable bar date by which a Proof of Claim must be Filed, as established by the Court, including the Bar Date Order, and the Confirmation Order.

1.11.    **"Bar Date Order"** shall mean the Order Granting the Debtors' Motion Establishing Bar Date for Filing Proofs of Claim and Approving Form and Notice Thereof, entered by the Court.

1.12.    **"Chapter 11 Case"** shall mean the chapter 11 cases filed by the Debtors and pending in the Court under Case Nos. 23-50868 and 23-50869, jointly administered.

1.13.    **"Claim"** shall mean any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

1.14.    **"Class"** shall mean a class of Claims, as described in Article II.

1.15.    **"Company"** shall mean NEO Tax & Accounting Services, LLC and Pearl Road Real Estate, LLC.

1.16.    **"Confirmation"** shall mean the confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

1.17.    **"Confirmation Date"** shall mean the date that the Court enters the Confirmation Order.

1.18.    **"Confirmation Order"** shall mean the order of the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.19.    **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, in Akron, or such other court as may have jurisdiction over the Debtors with respect to the Chapter 11 Case.

1.20.    **"Creditor"** shall mean any person that has a Claim against the Debtors that arose on or before the Petition Date.

1.21.    **"Debtors" or "Debtors-in-Possession"** shall mean NEO Tax & Accounting Services, LLC and Pearl Road Real Estate, LLC.

1.22.    **"Disputed Claim" shall mean:**

    a.    if no Proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that has been listed on the Debtors' schedule of liabilities as not disputed, contingent, or unliquidated, but as to which the Debtors, prior to the Effective Date, or any other party in interest, has Filed an objection or (ii) a Claim that has been listed on the Debtors' schedule of liabilities as disputed, contingent, or unliquidated; or

    b.    if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the applicable Bar Date, or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtors' schedule of liabilities as not disputed, contingent, or unliquidated, but as to which the nature or amount of the Claim as asserted in the Proof of Claim varies from the nature and amount of such Claim as it is listed on the schedule of liabilities; *provided however*, that such Claim shall not be a Disputed Claim under such

10

circumstances if the Debtors determine that the allowable nature and amount of the Claim is as asserted in the Proof of Claim; or (ii) a Claim as to which an objection has been Filed by the Debtors, prior to the Effective Date, or any other party in interest, and such objection has not been withdrawn or denied by a Final Order.

1.23.   **"Distributable Cash"** shall mean cash available for distribution to non-priority unsecured creditors in the approximate amount shown on Exhibit 2 to the Plan and Disclosure Statement accompanying this Plan available through the reorganized Debtors' income, less amounts paid to holders of Allowed Administrative Claims and Allowed Priority Claims over the life of the Plan as shown on the Feasibility Analysis attached to the Plan and Disclosure Statement.

1.24.   **"Distribution Date"** shall mean the date(s) designated by the Debtors for payment to Creditors in Class B.

1.25.   **"Due Date"** shall mean the date by which the Debtors must either pay in full a holder of an Allowed A-1 through A-4 Claim or surrender any A-1 through A-4 Collateral pursuant to Article IV of this Plan.

1.26.   **"Effective Date"** shall mean a date on or after the Confirmation Date specified by the Debtors on which the order confirming this Plan becomes final and non-appealable, and no appeal of which is pending.  In the event an appeal is pending, the Debtors may, in their sole discretion, select an Effective Date notwithstanding such appeal.

1.27.   **"Estate"** shall mean the bankruptcy estate created pursuant to sections 541 and 1115 of the Bankruptcy Code upon Filing of the Bankruptcy Case.

1.28.   **"File," "Filed," or "Filing"** shall mean file, filed, or filing with the Court in the Chapter 11 Case.

1.29.   **"Final Order"** shall mean a judgment or order as to which:  (a) any appeal that has been taken or review that has been sought has been finally determined or dismissed; or (b) the time

for filing a request for review, notice of appeal, or a petition for certiorari has expired and no request for review, notice of appeal, or petition for certiorari has been timely filed.

1.30. **"General Unsecured Claim"** shall mean any Claim not secured by a lien or security interest in the Debtors' property and not entitled to priority under section 507 of the Bankruptcy Code.

1.31. **"Interest"** shall mean the legal, equitable, contractual and all other rights of any person with respect to membership units, common stock, preferred stock or other capital stock or equity securities of or ownership interests in the Debtors, or any warrants, options, or other granted or otherwise agreed to by the Debtors providing for its issuance of any such capital stock, equity securities or ownership interests.

1.32. **"Interest Holder"** shall mean the holder of an interest.

1.33. **"IRS"** shall mean the Internal Revenue Service of the United States of America.

1.34. **"Petition Date"** shall mean June 27, 2023, the date the Chapter 11 Case was commenced.

1.35. **"Plan"** shall mean this First Amended Chapter 11 Plan of Reorganization and Disclosure Statement and any applicable modifications or amendments hereto that may be subsequently filed with the Court.

1.36. **"Priority Claim"** shall mean any Claim entitled to priority in payment under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

1.37. **"Priority Tax Claim"** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code including but not limited to real estate taxes owed on the Petition Date.

1.38.    **"Professional"** shall mean any professional retained in the Debtors' Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code.

1.39.    **"Pro-Rata"** shall mean proportionately so that: (a) the ratio of the amount of a particular Allowed Claim to the total amount of Allowed Claims of the class in which the particular Allowed Claim is included is the same as (b) the ratio of the amount of consideration distributed on account of such particular Allowed Claim to the consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included.

1.40.    **"Proof of Claim"** shall mean the document required to be Filed with the Court or its designated agent by a person asserting a Claim against the Debtors pursuant to chapter 5 of the Bankruptcy Code.

1.41.    **"Reorganized Debtors"** shall mean the Debtors after the Effective Date of the Plan.

1.42.    **"Schedules"** shall mean Schedules of Assets and Liabilities and Statement of Financial Affairs, as they may be amended, filed by the Debtors with the Court listing the Debtors' liabilities and assets.

1.43.    **"Secured Claim"** shall mean a claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and, if applicable, section 1129(b) of the Bankruptcy Code.

1.44.    **"Voting Deadline"** shall mean the deadline for submitting Ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, as specified in the Disclosure Statement.

13

Terms defined in the Bankruptcy Code and not otherwise specifically defined herein shall have the meanings attributed to them in the Bankruptcy Code.

**B.     Rules Of Interpretation and Computation Of Time**

   **1.     Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) all references in this Plan to "Sections", "Articles", and "Exhibits" are references to Sections, Articles, and Exhibits of or to this Plan; (e) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with Ohio law except to the extent that federal law, including the Bankruptcy Code and Bankruptcy Rules applies; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

2.      **Computation of Time**

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

3.      **Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of a contract, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and constructed and enforced in accordance with, the laws of the State of Ohio, without giving effect to the principles or conflicts of law thereof.

# ARTICLE II

# CLASSIFICATION OF CLAIMS

A.      **In General**

All Claims, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below. In accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article III, have not been classified. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

B.      **Claims Against the Debtors**

1.      **Impaired Classes of Claims**

a.      ***Classes A-1 through A-4 Claims:***

Allowed Secured Claims of Classes A-1 through A-4:

A-1: Medina County Treasurer ("Treasurer") secured by 1st priority security interest for taxes on the real property listed on Schedule III attached hereto.

15

A-2: KeyBank National Association ("Key") secured by a 1st priority security interest on the personal property listed on Schedule III attached hereto and 2nd priority mortgage on the real property listed on Schedule III attached hereto.

A-3: Small Business Administration ("SBA") secured by a 2nd priority security interest on the personal property listed on Schedule III attached hereto.

A-4: JP Morgan Chase Bank ("Chase") secured by a 1st priority security interest on the personal property listed on Schedule III attached hereto.

The amount of Classes A-1 thorough A-4 Allowed Secured Claims shall be as stated on Schedule III.

**b.** **_Class B Claims:_**

All Allowed Claims that are General Unsecured Claims of NEO Accounting & Tax Services, LLC.

**c.** **_Class C Claims:_**

All Allowed Claims that are General Unsecured Claims of Pearl Road Real Estate, LLC.

**2.** **CLASSES OF INTERESTS:**

**a.** **_Class D Interests:_**

The holders of Allowed Interests in the Debtors.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**A.** **Administrative Claims**

**1.** **In General**

Except as specified in Articles VI and XIV of this Plan, and subject to the Confirmation Order, and unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, each holder of an Allowed Administrative Claim will receive from the

16

Debtors cash equal to the amount of such Allowed Administrative Claim on the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, 30 days after the date on which an order allowing such Administrative Claim becomes a Final Order, in full satisfaction of its Claim.

### 2. Statutory Fees

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports. The Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. All post confirmation quarterly reports shall include all disbursements made by the Reorganized Debtors during the applicable quarter.

### 3. Ordinary Course Liabilities

Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their business will be paid by the Debtors, following the Effective Date, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, provided that any such Administrative Claim is supported by the Debtors' books and records. If an Administrative Claim is not so supported, then the Debtors shall notify such creditor within ten (10) days after the Confirmation Date and the holder of such Administrative Claim must comply with the provisions of Article III. A. 4 of this Plan.

17

4. **Bar Date for Administrative Claims**

    *a.*     ***General Bar Date Provisions***

Holders of Administrative Claims are required to File and serve a request for payment in accordance with the Confirmation Order. If any such Claim is not Filed and served by the date contained in the Confirmation Order, it shall be forever barred and will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Debtors, and the requesting party, by 20 days after the Filing of the applicable request for payment of the Administrative Claim.

    *b.*     ***Professional Compensation***

Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered before the Confirmation Date (including compensation requested pursuant to section 503(b)(3) and (4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the Debtors' Chapter 11 Case) must File and serve on the Debtors, and such other entities that are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Court, an application for final allowance of compensation and reimbursement of expenses no later than 45 days after the Confirmation Date. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors, and the requesting party no later than 20 days after the Filing of the applicable request for payment of compensation and reimbursement of expenses.

B. **Priority Tax Claims**

Unless such holder, or its successors or assigns, and the Debtors agree to other terms, or a Final Order of the Court provides for other terms, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code subject to Article VI of this Plan, the Debtors will pay, in full, in cash Allowed

Priority Tax Claims when ordinarily due. The Debtors are aware of no priority tax claims other than the current real estate taxes in Class A-1.

## ARTICLE IV
## TREATMENT OF CLASSES OF CLAIMS

**A.      Treatment of Impaired Class of Claims**

**1.      Classes A-1 through A-4**

In full satisfaction of their Allowed Claims, the holders of Allowed Clams in Classes A-1 through A-4 shall receive the following:

a.   The holder of Allowed Claims in Class A-1 (Treasurer) shall receive the following in full satisfaction of its Allowed Secured Claims:

    i.   The Debtor will pay the Treasurer in full on the date when real estate taxes are ordinarily due. The Treasurer shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-1 Collateral").

b.   The holder of Allowed Claims in Class A-2 (Key) shall receive the following in full satisfaction of its Allowed Secured Claims:

    i.   The Debtor will pay: $1,091,825.00, or the amount owed on the Effective Date, whichever is less, to Key on the promissory notes dated February 16, 2017, and April 12, 2017, as they may have been amended from time to time (the "Key Notes"). On the Effective Date, the Key Notes shall bear interest at a simple interest rate of 10.50% (prime rate plus 2.00%) per annum, amortized over a term of 180 months, with equal monthly payments due on the 15th day of each month in the amount of $12,069.02 on its obligations to Key, and a balloon payment of the remaining unpaid balance

19

of the Key Allowed Secured Claim payable on the Due Date, which shall be the last day of the 60th month after the Effective Date. Key shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-2 Collateral"). Other than the foregoing, all other terms and conditions of the Key Notes, and related Loan Agreement, Mortgage and Security Agreements shall remain in full force and effect, including but not limited to the obligation of timely financial reporting.

    ii. The balance, if any, of Key's Claim shall be paid as a Class B Claim.

c. The holder of an Allowed Claim in Class A-3 (SBA) shall receive the following in full satisfaction of its Allowed Secured Claims:

    i. SBA's Claim shall be paid as a Class B Claim.

    ii. SBA's security interest in the Debtor's assets shall be cancelled and released upon the confirmation of this Plan.

d. The holder of an Allowed Claim in Class A-4 ("Chase") shall receive the following in full satisfaction of its Allowed Secured Claims:

    i. The Debtor will pay: $60,362.00 to Chase on the retail installment contract dated September 16, 2022, (the "Chase Note") pursuant to the original terms of the Chase Note. Chase shall retain its security interest in the collateral with the same validity and priority as on the Petition Date (the "A-4 Collateral").

**2. Insurance Provisions Applicable to Classes A-1 through A-4**

The Debtors shall pay all property and casualty insurance premiums for the A-1 through A-4 Collateral directly to insurance carriers; provided however, the

20

applicable Debtor shall remain liable for such property and casualty insurance premiums as provided in each Class A-1 through A-4 Creditors' loan documents.

3. **Default Provisions Applicable to Class A-1 through A-4**

Should the Debtors default on any provision of this Plan or loan documents related to a Class A-1 through A-4 Claim, then such holder of a Class A-1 through A-4 Claim to whom the Debtors are in default shall be entitled to its state law remedies without resort to seeking relief from the injunction provided in this Plan in the Court, in addition to remedies that may be available under the Bankruptcy Code.

4. **Surrender of Collateral**

Should the Debtors surrender, by means reasonably acceptable to such holder of an Allowed Class A-1 through A-4 Claim, any portion of the collateral of such holder of an Allowed Class A-1 through A-4 Claim before the applicable Due Date, any resulting deficiency shall be treated as an Allowed Class B Claim and such Creditor shall be entitled to participate in Class B distributions commencing with the first distribution after the date the collateral is liquidated. Upon the liquidation of collateral, such Creditor, or Creditors, shall provide notice to the Debtors and Debtors' counsel with an accounting of the Claim and application of all proceeds to such Claim.

5. **CLASS B**

Each holder of a Class B Allowed Claim shall receive in full satisfaction of its Allowed Class B Claim Distributable Cash from the Debtors. The payment by the Debtors to holders of Allowed Class B Claims shall be made in five (5) annual payments beginning in the first year following the Effective Date, but in no event, commencing later than June 30, 2024, and on the 30th day of June each year thereafter. Total payments of Distributable

21

Cash shall be not less than One Hundred Eighty-seven Thousand Two Hundred Sixty-two and 00/100 Dollars ($187,262.00), less administrative expenses of the Chapter 11 Case over the term of the Plan. Should any holder of an Allowed Class A-1 through A-4 Claim become entitled to participate in payment of Distributable Cash, then each holder of an Allowed Class B Claim will receive payments of a Pro Rata portion of Distributable Cash thereafter.

6.    **CLASS C**

Each holder of a Class C Allowed Claim shall receive no distributions under this Plan because the Debtor Pearl Road Real Estate, LLC is projected to have no net income during the term of the Plan.

7.    **CLASS D**

The holders of Interests in the Debtors shall retain their Interests in exchange for payment of $10,000 as follows: $2,500 on the Effective Date and every 120 days thereafter until the $10,000 is paid to the estate as additional Distributable Cash.

B.    **No Accrual of Post-petition Interest**

With the specific exception of Class A-1, A-2, and A-4 or as otherwise provided in this Plan, no holder of an Allowed Claim shall be entitled to the accrual of post-petition interest or the payment by the Debtors of post-petition interest on account of such Claim for any purpose.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF THIS PLAN; EFFECT OF**
**REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS**

A.    **Impaired Classes of Claims Entitled to Vote**

Except as otherwise provided in this Plan, holders of Allowed Claims in each impaired Class of Claims are entitled to vote as a class to accept or reject this Plan.

B.    **Acceptance by an Impaired Class of Claims**

22

Pursuant to section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims has accepted this Plan if the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class actually voting on this Plan have voted to accept this Plan.

## ARTICLE VI
## MEANS OF EXECUTION

### A. Introduction

Through restructuring transactions discussed below, the Debtors will restructure their finances by committing their disposable income to Plan payments and by modifying certain secured obligations.

Immediately following the Effective Date of the Plan, Debtors will move their operating and savings accounts to Key, and all payments to be made under and pursuant to the Plan shall be made from these accounts at Key.

### B. Restructuring Transactions

#### 1. Payments To Class B

The holders of Allowed Claims in Class B shall be paid by the Debtors in annual payments from the Debtors' disposable income for a period of not more than five (5) years, with such five (5) year period commencing in the first calendar year following the Effective Date, but in no event, commencing later than June 30, 2024. Distributions of Distributable Cash plus the new value paid by Brett Mangon to retain his Interests shall be each holder's Pro-Rata share of Distributable Cash from (i) the Debtors' disposable income; and (ii) any funds recovered by the Debtors, less any costs associated with recovering such funds, with respect to those claims, demands, and causes of action retained pursuant to Article IX of this Plan from the preceding calendar year, of not less than $187,262.00 over the life of this Plan.

2.      **Payments to Classes A-1 through A-4**

As more fully set forth in Article IV.B, the Debtors propose to restructure their secured financings to enable them to continue in business and allow funds for distributions to holders of Allowed Class B Creditors.

**C.      Preservation of Rights of Action**

Except as otherwise provided in this Plan, in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, pursuant to section 1123(b) of the Bankruptcy Code, Key, the Debtors, and their successors and assigns, retain and may enforce any claims, rights, and causes of action that the Debtors or the Estate may hold against any entity, including, but not limited to, any Avoidance Actions. The Debtors in their capacity as reorganized Debtors shall be authorized and empowered to prosecute and/or settle any such claims, rights, or causes of action. The Debtors are not aware of any causes of action.

**D.      Releases by Recipients of Distributions**

Except as otherwise provided in this Plan, each entity receiving a distribution pursuant to this Plan on account of its Allowed Claim will be deemed to forever release, waive, and discharge all known and unknown Claims of any nature that such entity has, had, or may have, prior to the Effective Date against the Debtors to the fullest extent permitted under applicable law. The Confirmation Order will enjoin the prosecution, whether directly, derivatively, or otherwise, of any Claim, debt, and right or cause of action released or to be released pursuant to this Plan.

**E.      Release of Liens**

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document created in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate, or against property that is collateral for any obligation of the Debtors, will be fully released and discharged, and all of

24

the rights, titles, and interests of any holder of such mortgages, deeds of trust, liens or other security interests will revert to the Debtors and their successors and assigns.

## F.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Debtors will be authorized to: (a) execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents contemplated by or entered into in connection with this Plan; and (b) take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtors will be authorized to certify or attest to any of the foregoing actions.  The Debtors reserve the right to liquidate certain real property from time to time in the ordinary course of business after the Confirmation of the Plan.  Pursuant to section 1146(c) of the Bankruptcy Code: (a) the creation or transfer of any mortgage, deed of trust or other security interest; (b) the making or assignment of any lease or sublease; (c) the making or delivery of any deed or other instrument, in furtherance of or in connection with this Plan, including any agreements of consolidation, deeds, bills of sale, assignments, assumptions, or delegations of any asset, property, right, liability, duty or obligation; or (d) the making of any instruments of transfer executed in connection with any of the foregoing will not be subject to any stamp tax, real estate transfer tax, or similar tax.

## G.    Debtors' Management

The Debtors will continue to be managed by their owner Brett Mangon ("Mangon").  There will be no change in the Debtors' management or ownership structure as a result of confirmation of this Plan.  Additionally, Mangon shall not be entitled to a monthly distribution of $12,000 per month, in any one month, unless and until the Debtors make their monthly Plan payment of $12,069.02 to Key on account of its Allowed Secured Claim.  Mangon shall not receive any form of income, compensation, or remuneration from Debtors except: (i) his monthly distributions; (ii)

25

payment of the Chase Note loan expense and operating expenses relating to Debtors' ownership of the 2023 Range Rover being driven by Mangon; and (iii) payment of federal income and self-employment taxes, all as set forth in Exhibit 2 to the Plan.

## ARTICLE VII
## TREATMENT OF DISPUTED CLAIMS

No payment or distributions will be made on a Claim if any portion of the Claim is disputed until all of the objections to the Claim, or any portion of the Claim, have been determined by a Final Order of the Court. Any payment or distribution that otherwise would have been made on account of such Claim had it been allowed will be held in reserve by the Debtors (in the "Unpaid Claims Reserve") pending a determination of the allowability of the Claim.

In the event that a Disputed Claim is resolved by the allowance of such Claim in whole or in part, the Debtors will make the appropriate distribution to the holder of the Claim from the Unpaid Claims Reserve in accordance with the provisions of this Plan. When all Disputed Claims have been allowed or disallowed, all cash then remaining in the Unpaid Claims Reserve will be distributed to holders of Allowed Class C Claims.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors hereby assume no agreements with and reject all executory contracts and unexpired leases to which the Debtors are a party that have not been assumed or rejected by an Order of the Court prior to the Effective Date with the specific exception of those listed on Schedule VIII attached hereto. Any and all claims for damages arising from the rejection of executory contracts or unexpired leases shall be treated as non-priority General Unsecured Claims and included in Class B.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO CONFIRMATION AND**
**CONSUMMATION OF THIS PLAN**

**A.     Conditions to Confirmation**

The Court will not enter the Confirmation Order unless, and until, each of the following conditions has been satisfied or waived (if waivable):

1.     The Court will have entered an order granting the Debtors' Motion to Approve Plan and Disclosure Statement, and

2.     The Confirmation Order will be reasonably acceptable to the Debtors, in form and substance.

**B.     Conditions to Effective Date**

This Plan shall not be consummated, and the Effective Date shall not occur, unless the following conditions are satisfied or waived (if waivable):

1.  The Court will have entered the Confirmation Order; and

2.  The Court will have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtors to take all actions necessary or appropriate to implement this Plan.

**ARTICLE X**
**CRAM-DOWN**

The Debtors hereby request the Court to find that the provisions of this Plan provide fair and equitable treatment to any class of Claims that is impaired under this Plan and that has not accepted this Plan, and to confirm this Plan notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code as applied to such class.

**ARTICLE XI**
**TITLE TO THE DEBTORS' PROPERTY**

Upon confirmation, all property of the Debtors' Estates shall vest in the Debtors free and clear of all liens, claims, or encumbrances except as specifically set forth in this Plan.

27

**ARTICLE XII**
**RETENTION OF CERTAIN CAUSES OF ACTION**

This Plan provides that the Debtors shall retain any claims, demands, and causes of action of the kind specified in sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code accruing prior to the Effective Date, except with respect to any claims, demands and/or causes of action against Key of which Debtors have determined there are none existing. The Debtors may, upon notice to the Office of the United States Trustee, compromise and settle any such retained claims, demands, and causes of action. All consideration received by the Debtors as a result of a settlement of any such retained claims, or of enforcement of any judgment obtained on any such retained claims, less any costs associated with receiving or recovering such consideration, shall be utilized by the Debtors to fund this Plan, and shall be distributed in accordance with its terms.

The Debtors are aware of no such claims or causes of action.

**ARTICLE XIII**
**DISCHARGE AND INJUNCTION**

**A.     Discharge**

In accordance with 11 U.S.C. § 1141(d)(1)(A), the Debtors hereby provide notice that they are seeking an Order from this Court granting a discharge upon Confirmation of this Plan, of all Claims and liens which existed prior to Confirmation of the Plan, except liens, payments, and distributions expressly provided for in the Plan. As basis for the grant of a discharge upon Confirmation, the Debtors submit that the Plan, as proposed, provides for adequate assurance that payments will be made in full to administrative and priority Creditors and that payments will be made as proposed herein to secured, and unsecured Creditors as set forth in the treatment for such Class of Creditors. The Debtors hereby give notice that they intend to seek the above referenced relief at the hearing on Confirmation of this Plan. The discharge will be fully effective against all

28

Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of Section 1129(b) of the Bankruptcy Code.

Except as provided in this Plan or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims under this Plan will be in exchange for and in complete satisfaction, discharge, and release of all Claims, including any interest accrued on Claims from the Petition Date. Except as provided in this Plan or the Confirmation Order, consummation of the Debtors' Plan will (a) discharge the Debtors from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted this Plan; and (b) terminate all interests and other rights of Creditors, if any, in property of the Debtors.

As of the Confirmation Date, except as provided in this Plan or Confirmation Order, all entities will be precluded from asserting against the Debtors, the Estates, and any entity to be formed under this Plan, any other or further Claims, debts, rights, causes or action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order will be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all such Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge

29

will void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged Claim.

**B.    Injunction**

Except as provided in this Plan or the Confirmation Order and so long as the Debtors are not in default of the terms of this Plan, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim, or other debt or liability that is discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities:  (a) commencing or continuing in any manner any action or other proceeding against the Debtors,  or the property of the Debtors; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors,  or  the  property  of  the  Debtors;  (c)  creating,  perfecting,  or  enforcing  any  lien  or encumbrance  against  the  Debtors,  or  the  property  of  the  Debtors;  (d)  asserting  a  right  of subordination of any kind against any debt, liability, or obligation due to the Debtors, or the Estate or the property of the Debtors; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

**ARTICLE XIV**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.    General Distribution Provisions**

**1.    Method of Distributions to Holders of Claims**

The Debtors will make all distributions required under this Plan and will serve without bond.

**2.    Distributions to be Made on the Effective Date**

Distributions to be made on or as soon as practicable after the Effective Date to holders of Claims that are allowed as of the Effective Date will be deemed made on the Effective

30

Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than: (a) 60 days after the Effective Date, or such later date as the Debtors first have funds sufficient to make such payments while retaining appropriate reserves for payment of: (i) all costs, expenses, and obligations of administering this Plan and (ii) all other Claims that have the same priority or a higher priority of payment as established herein or (b) such later date when the applicable conditions of this Plan regarding undeliverable distributions are satisfied. Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to this Article.

### 3. Timing and Calculation of Amounts to be Distributed

#### a. *Establishment of Distribution Dates*

Distribution Dates to holders of Allowed Class B Claims shall be established by the Debtors in their discretion. The Debtors shall establish Distribution Dates to make distributions to Creditors as soon as practicable in annual payments commencing in the first calendar year after the Effective Date, but in no event, commencing no later than June 30, 2024, and on the 30th day of June each year thereafter for a period of five (5) years and a total of five (5) distributions. Before making any distribution, the Debtors will establish an appropriate reserve for the payment of costs. In making any distribution, the Debtors will account for and reserve for distributions that are being made and/or will need to be made to other Classes and to other members of the same Class.

#### b. *Timing of Payment of Distributions of Less Than $10*

To the extent that any distribution to be made to an Allowed Claim holder (which Allowed Claim holder has not already received a distribution hereunder) on any Distribution Date is less than $10, the Debtors may withhold such distribution until a later

31

Distribution Date on which the cumulative amount to be distributed to such Allowed Claim holder is equal to or greater than $10, if ever.

**B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.      Delivery of Distributions in General**

Distributions to holders of Allowed Claims will be made by the Debtors: (a) at the addresses set forth on the respective Proofs of Claim Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Debtors after the date of Filing of any related Proof of Claim; or (c) at the addresses reflected in the Debtors' schedules of liabilities if no Proof of Claim has been Filed and the Debtors have not received a written notice of a change of address.

**2.      Undeliverable Distributions**

If any distribution to an Allowed Claim holder is returned to the Debtors as undeliverable, no further distributions will be made to such holder unless and until the Debtors are notified by written certification of such holder's then-current address. Nothing contained in this Plan will require the Debtors to attempt to locate any holder of an Allowed Claim. Undeliverable distributions will remain in the possession of the Debtors pursuant to this Section XIV.B.2 until such time as a distribution becomes deliverable. On each Distribution Date, the Debtors will make all distributions that became deliverable to holders of Allowed Claims since the previous Distribution Date. Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable distribution to be made by the Debtors within one year after the last date on which a distribution was first deliverable to such Allowed Claim holder will be forever barred from asserting any such Claim. In such cases, any cash held for distribution on account of such Claims will be redistributed to holders of Allowed Claims in the priority order set forth in this Plan.

C.      **Means of Cash Payments**

Cash payments made pursuant to this Plan will be in U.S. dollars by checks drawn on a domestic bank selected by the Debtors or by wire transfer from a domestic bank, at the option of the Debtors.

D.      **Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, the Debtors will comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements, and the Debtors will be authorized to pay excise or other employer-related taxes. The Debtors will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of this Plan, each entity receiving a distribution of cash pursuant to this Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

E.      **Setoffs**

Pursuant to section 553 of the Bankruptcy Code, or any applicable nonbankruptcy law, the Debtors may set off any claims, debts, rights and causes of action of any nature that Debtors or any entity to be formed under this Plan may hold against the holder of an Allowed Claim, and the distributions to be made pursuant to this Plan on an Allowed Claim (before any distribution is made with regard to such Claim). Neither the failure to affect such a setoff, nor the allowance of any Claim hereunder, will constitute a waiver or release of any claims, debts, rights and causes of action against such holder.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

### A.      Retention of Jurisdiction

The Court retains jurisdiction over the Debtors' Plan and the parties to the Debtors' Plan to interpret and enforce all the provisions of the Debtors' Plan.

### B.      Modification of this Plan

Subject to the restriction on modifications set forth in section 1127 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan before its substantial consummation.

### C.      Revocation of this Plan

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan, or if Confirmation does not occur, then this Plan will be null and void in all respects, and nothing contained in this Plan will: (a) constitute a waiver or release of any Claims by or against the Debtors' real or personal property; or (b) prejudice in any manner the rights of the Debtors.

### D.      Exculpation and Limitation of Liability

Except as otherwise specifically provided in this Plan, the Debtors in their capacity as such, any of their respective, present or former, officers, owners, advisors, attorneys, representatives, financial advisors, investment bankers, or agents, appointed under section 327 of the Bankruptcy Code, and any of their successors and assigns, will not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, negotiation and Filing of this

34

Plan, Filing the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan, the administration of this Plan, or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

E.    **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, and so long as any such alteration or interpretation is not a material change to the Plan as determined by the Debtors, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. If any such alteration or interpretation results in a material change to the Plan as determined by the Debtors, then the Debtors reserve the right to withdraw the Plan. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

F.    **Determination of Tax Liability**

Pursuant to section 505(b) of the Bankruptcy Code, the Debtors may request a determination of any unpaid liability for any federal income tax incurred during the administration of the Chapter 11 Case by submitting a tax return for such tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the IRS. The Debtors reserve the right, to the extent they deem it necessary and appropriate, to request similar determinations of any

35

unpaid liability for any other taxes (including, without limitation, any state or local taxes) incurred during the administration of their Chapter 11 Case by submitting a tax return for such other tax, together with payment of the tax, if any, shown thereon, and a request for such a determination to the appropriate governmental unit charged with responsibility for collection or determination of such tax.

G. **Professionals Employed by Order of the Court.**

After Confirmation of this Plan, all applications for compensation and reimbursement of expenses, and notice of the hearing thereon, shall be served upon counsel for the Debtors, the Office of the United States Trustee, and any party who files with the Court a new request for notice. After such notice and hearing, the Debtors will be authorized to distribute and pay to such professionals such amounts as approved by the Court.

December 4, 2023,

NEO ACCOUNTING &
TAX SERVICES, LLC
/s/ Brett Mangon
By: Brett Mangon, Member


PEARL ROAD REAL ESTATE, LLC

/s/ Brett Mangon
By: Brett Mangon, Member


/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
3930 Fulton Drive N.W., Suite 100B
Telephone: 330-305-9700
Facsimile: 330-305-9713
E-mail: tony@ajdlaw7-11.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

36

## SCHEDULE III

| MEDINA COUNTY TREASURER A-1 | | | |
|---|---|---|---|
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$8,498.07** | Real Estate | $800,000 | $8,498.07 |

| KEYBANK NA: CLASS A-2 | | | |
|---|---|---|---|
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$2,046,916.00** | Real Estate & All Other Assets | $1,091,825.00 | $1,091,825.00 |

| SBA: CLASS A-3 | | | |
|---|---|---|---|
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$1,945,700.00** | NEO Accounting Personal Property & Accounts Receivable | $291,825.00 | $0.00 |

| JP MORGAN CHASE: CLASS A-4 | | | |
|---|---|---|---|
| **Approximate Claim Amount** | **Property** | **Property Value** | **Value of Lien** |
| **$63,450.00** | Vehicle | $60,362.00 | $60,362.00 |

37

**SCHEDULE VIII**

| | Counter party | Service Provided | Cure Amount |
|---|---|---|---|
| 1. | Kloud 9 | Network & Telephone Services | $0 |
| 2. | Quatient | Postage Meter Lease | $0 |
| 3. | Shelbourne CP, LLC | Lease of Beachwood office | $0 |
| 4. | Thomson Reuters | Software services | $0 |
| 5. | Verizon Wireless | Cell phone services | $0 |

**EXHIBIT 2**

**FEASIBILITY ANALYSIS**

NEO Accounting & Tax Services, LLC
5 Year Projection

| | | Projected 2024 | Projected 2025 | Projected 2026 | Projected 2027 | Projected 2028 |
|---|---|---|---|---|---|---|
| **Income:** | | | | | | |
| Annual Revenue | | 1,200,000 | 1,224,000 | 1,248,480 | 1,273,450 | 1,298,919 |
| | | | | | | |
| **Debt:** | | | | | | |
| Key Bank ($12,069 per month) | Principal | (31,683) | (35,174) | (39,050) | (43,354) | (48,132) |
| | Interest | (113,146) | (109,654) | (105,778) | (101,474) | (96,697) |
| JP Morgan Chase Range Rover ($1,167 per month) | Principal | (10,284) | (11,027) | (11,824) | (12,679) | (13,596) |
| | Interest | (3,833) | (3,089) | (2,292) | (1,438) | (521) |
| | | | | | | |
| **Labor:** | | | | | | |
| Wages/Taxes/IRA Match | | (417,440) | (429,963) | (442,862) | (456,148) | (469,832) |
| Owner Pay | | (144,000) | (144,000) | (144,000) | (144,000) | (144,000) |
| Outsource Labor | | (75,000) | (76,500) | (78,030) | (79,591) | (81,182) |
| | | | | | | |
| **Net Cash After Debt Service & Labor** | | **404,614** | **414,593** | **424,644** | **434,766** | **444,958** |
| | | | | | | |
| **Administrative Expenses:** | | | | | | |
| Insurances | | (19,950) | (20,349) | (20,756) | (21,171) | (21,595) |
| Office Expense (includes postage & delivery) | | (35,000) | (35,700) | (36,414) | (37,142) | (37,885) |
| Computer Software | | (76,000) | (77,520) | (79,070) | (80,652) | (82,265) |
| Fees & Bank Charges | | (5,100) | (5,202) | (5,306) | (5,412) | (5,520) |
| Rent | | (6,720) | (6,854) | (6,991) | (7,131) | (7,274) |
| Equipment Lease | | (2,000) | (2,040) | (2,081) | (2,122) | (2,165) |
| Repairs & Maintenance | | (61,000) | (12,000) | (12,240) | (12,485) | (12,734) |
| Utilities (includes Network, Internet & Phone) | | (60,000) | (61,200) | (62,424) | (63,672) | (64,946) |
| Travel | | (1,000) | (1,020) | (1,040) | (1,061) | (1,082) |
| Meals & Entertainment | | (2,000) | (2,040) | (2,081) | (2,122) | (2,165) |
| Mileage | | (1,200) | (1,224) | (1,248) | (1,273) | (1,299) |
| Dues & Subscriptions | | (2,600) | (2,652) | (2,705) | (2,759) | (2,814) |
| Professional Fees | | (2,000) | (2,040) | (2,081) | (2,122) | (2,165) |

|  |  |  |  |  |  |
|---|---|---:|---:|---:|---:|---:|
| Continuing Education | | (2,250) | (2,295) | (2,341) | (2,388) | (2,435) |
| Real Estate Taxes | | (17,000) | (17,340) | (17,687) | (18,041) | (18,401) |
| City Income Tax | | (4,700) | (4,794) | (4,890) | (4,988) | (5,087) |
| Ohio CAT | | (1,650) | (1,683) | (1,717) | (1,751) | (1,786) |
| | **Total** | (300,170) | (255,953) | (261,072) | (266,294) | (271,620) |
| | **Subtotal** | 104,444 | 158,639 | 163,571 | 168,472 | 173,338 |
| Federal Income & Self Employment Tax - Owner | | (101,644) | (122,094) | (107,650) | (109,365) | (111,068) |
| | **Net Cash Flow** | $ 2,800 | $ 36,545 | $ 55,921 | $ 59,107 | $ 62,270 |

**Tax Calculation**

|  |  |  |  |  |  |
|---|---:|---:|---:|---:|---:|
| Cash Basis Income Before Addbacks | 104,444 | 158,639 | 163,571 | 168,472 | 173,338 |
| Owner Draws (Not deductible) | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 |
| Key Bank Debt Principal (Not deductible) | 31,683 | 35,174 | 39,050 | 43,354 | 48,132 |
| JP Morgan Chase Debt Principal (Not deductible) | 10,284 | 11,027 | 11,824 | 12,679 | 13,596 |
| Taxable Income | 290,411 | 348,840 | 358,445 | 368,505 | 379,066 |
| Self Employment and Ordinary Income Tax Rates | 35% | 35% | 35% | 35% | 35% |
| | $ 101,644 | $ 122,094 | $ 125,456 | $ 128,977 | $ 132,673 |

# EXHIBIT 2

# LIQUIDATION ANALYSIS

## NEO Accounting & Tax Services, LC

| ASSET | VALUE | LIENS | COSTS OF ADMINISTRATION | LIQUIDATION VALUE |
|---|---|---|---|---|
| Cash & Bank Accts | $170,000.00 | $3,992,616.00 | $17,000.00 | $0.00 |
| Security Deposit | $2,000.00 | $3,992,616.00 | $200.00 | $0.00 |
| Accounts Receivable | $61,100.00 | $3,992,616.00 | $6,100.00 | $0.00 |
| Vehicles | $60,362.00 | $63,450.00 | $600.00 | $0.00 |
| Machinery | $58,725.00 | $3,992,616.00 | $5,872.00 | $0.00 |
| | | | | |
| **TOTAL** | **$352,187.00** | **$4,056,066.00** | **$29,772.00** | **$0.00** |

## Pearl Road Real Estate LLC

| ASSET | VALUE | LIENS | COSTS OF ADMINISTRATION | LIQUIDATION VALUE |
|---|---|---|---|---|
| Real Estate | $800,000.00 | $1,796,916.00 | $80,000.00 | $0.00 |
| | | | | |
| **TOTAL** | **$800,000.00** | **$1,796,916.00** | **$80,000.00** | **$0.00** |

# EXHIBIT 3

# FEASIBILITY ANALYSIS

NEO Accounting & Tax Services, LLC
5 Year Projection

|  |  | Projected 2024 | Projected 2025 | Projected 2026 | Projected 2027 | Projected 2028 |
|---|---|---|---|---|---|---|
| **Income:** | | | | | | |
| Annual Revenue | | 1,200,000 | 1,224,000 | 1,248,480 | 1,273,450 | 1,298,919 |
| | | | | | | |
| **Debt:** | | | | | | |
| Key Bank ($12,069 per month) | Principal | (31,683) | (35,174) | (39,050) | (43,354) | (48,132) |
| | Interest | (113,146) | (109,654) | (105,778) | (101,474) | (96,697) |
| JP Morgan Chase Range Rover ($1,167 per month) | Principal | (10,284) | (11,027) | (11,824) | (12,679) | (13,596) |
| | Interest | (3,833) | (3,089) | (2,292) | (1,438) | (521) |
| | | | | | | |
| **Labor:** | | | | | | |
| Wages/Taxes/IRA Match | | (417,440) | (429,963) | (442,862) | (456,148) | (469,832) |
| Owner Pay | | (144,000) | (144,000) | (144,000) | (144,000) | (144,000) |
| Outsource Labor | | (75,000) | (76,500) | (78,030) | (79,591) | (81,182) |
| | | | | | | |
| **Net Cash After Debt Service & Labor** | | **404,614** | **414,593** | **424,644** | **434,766** | **444,958** |
| | | | | | | |
| **Administrative Expenses:** | | | | | | |
| Insurances | | (19,950) | (20,349) | (20,756) | (21,171) | (21,595) |
| Office Expense (includes postage & delivery) | | (35,000) | (35,700) | (36,414) | (37,142) | (37,885) |
| Computer Software | | (76,000) | (77,520) | (79,070) | (80,652) | (82,265) |
| Fees & Bank Charges | | (5,100) | (5,202) | (5,306) | (5,412) | (5,520) |
| Rent | | (6,720) | (6,854) | (6,991) | (7,131) | (7,274) |
| Equipment Lease | | (2,000) | (2,040) | (2,081) | (2,122) | (2,165) |
| Repairs & Maintenance | | (61,000) | (12,000) | (12,240) | (12,485) | (12,734) |
| Utilities (includes Network, Internet & Phone) | | (60,000) | (61,200) | (62,424) | (63,672) | (64,946) |
| Travel | | (1,000) | (1,020) | (1,040) | (1,061) | (1,082) |
| Meals & Entertainment | | (2,000) | (2,040) | (2,081) | (2,122) | (2,165) |
| Mileage | | (1,200) | (1,224) | (1,248) | (1,273) | (1,299) |
| Dues & Subscriptions | | (2,600) | (2,652) | (2,705) | (2,759) | (2,814) |
| Professional Fees | | (2,000) | (2,040) | (2,081) | (2,122) | (2,165) |

| | | | | | |
|---|---|---|---|---|---|
| Continuing Education | (2,250) | (2,295) | (2,341) | (2,388) | (2,435) |
| Real Estate Taxes | (17,000) | (17,340) | (17,687) | (18,041) | (18,401) |
| City Income Tax | (4,700) | (4,794) | (4,890) | (4,988) | (5,087) |
| Ohio CAT | (1,650) | (1,683) | (1,717) | (1,751) | (1,786) |
| **Total** | (300,170) | (255,953) | (261,072) | (266,294) | (271,620) |
| **Subtotal** | 104,444 | 158,639 | 163,571 | 168,472 | 173,338 |
| Federal Income & Self Employment Tax - Owner | (101,644) | (122,094) | (107,650) | (109,365) | (111,068) |
| **Net Cash Flow** | $ 2,800 | $ 36,545 | $ 55,921 | $ 59,107 | $ 62,270 |

**Tax Calculation**

| | | | | | |
|---|---|---|---|---|---|
| Cash Basis Income Before Addbacks | 104,444 | 158,639 | 163,571 | 168,472 | 173,338 |
| Owner Draws (Not deductible) | 144,000 | 144,000 | 144,000 | 144,000 | 144,000 |
| Key Bank Debt Principal (Not deductible) | 31,683 | 35,174 | 39,050 | 43,354 | 48,132 |
| JP Morgan Chase Debt Principal (Not deductible) | 10,284 | 11,027 | 11,824 | 12,679 | 13,596 |
| Taxable Income | 290,411 | 348,840 | 358,445 | 368,505 | 379,066 |
| Self Employment and Ordinary Income Tax Rates | 35% | 35% | 35% | 35% | 35% |
| | $ 101,644 | $ 122,094 | $ 125,456 | $ 128,977 | $ 132,673 |